# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 3, 2011 Session

# PAM WEBB v. NASHVILLE AREA HABITAT FOR HUMANITY, INC.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Davidson County**
**No. 09C-1221      Barbara N. Haynes, Judge**

---

**No. M2009-01552-SC-R11-CV - Filed July 21, 2011**

---

In this action alleging retaliatory discharge, the trial court granted the defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6). The Court of Appeals vacated the trial court's judgment, holding that the amended complaint sufficiently stated a cause of action for retaliatory discharge. We address the issue of the proper standard for Tennessee courts to apply in ruling on a Rule 12.02(6) motion to dismiss in light of the United States Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009). We decline to adopt the new Twombly/Iqbal "plausibility" pleading standard and affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

R. Eddie Wayland, Nashville, Tennessee, for the appellant, Nashville Area Habitat for Humanity, Inc.

James L. Harris, Nashville, Tennessee, for the appellee, Pam Webb.

Dale Conder, Jr. and Bradford D. Box, Jackson, Tennessee, for the Amicus Curiae, Tennessee Defense Lawyers Association.

Justin Gilbert, Jackson, Tennessee, William B. Ryan, Memphis, Tennessee, Jennifer B. Morton, Knoxville, Tennessee, and Wade B. Cowan, Nashville, Tennessee, for the Amicus Curiae, Tennessee Employment Lawyers Association.

Jonathan O. Harris, Nashville, Tennessee, for the Amicus Curiae, Center for Individual Freedom.

**OPINION**

*Background*

Pam Webb was employed by the Nashville Area Habitat for Humanity, Inc. ("Habitat") as vice president of family services, beginning her employment in August of 2007. Habitat terminated Ms. Webb's employment in February of 2009. Ms. Webb filed a complaint alleging retaliatory discharge under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (2008 & Supp. 2010), and the common law of Tennessee. After Habitat filed a motion to dismiss her complaint for failure to state a claim upon which relief can be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6), Ms. Webb filed an amended complaint that alleged the following:

> [I]n December 2008 plaintiff filed a written complaint regarding what she had reasonable cause to believe perceived [*sic*] were illegal acts which had been or would be performed at the discretion of [Habitat's] management. Specifically, plaintiff was told not to allow services to be given to a person 74 years old because it would be a bad decision to loan money to someone this old. Further, Chris McCarthy, a management employee, made statements and asked staff members to implement policies that were and are discriminatory and in direct violation of the Equal Credit Opportunity Act, regulations promulgated thereunder, and the Tennessee Human Rights Act in that the policies in question involved unlawful age discrimination. The statements have been made in regard not only to age but also as to familial status, and disability, thus evidencing a course of illegal corporate conduct.
>
> As a result of plaintiff's complaints and unwillingness to participate in or remain silent about these illegal acts, plaintiff was terminated approximately two months later on or about February 23, 2009. The reason given was "budgetary reasons." However, plaintiff would state that this reason is a pretext meant to disguise the real reason which was the fact that she complained about illegal activities, and refused to participate in or remain silent about those activities.

Habitat responded by filing an amended 12.02(6) motion to dismiss, asserting that the amended complaint failed to state a claim upon which relief can be granted.

The trial court granted Habitat's motion and dismissed Ms. Webb's amended complaint on all of her claims. The Court of Appeals vacated the trial court's judgment, holding that the amended complaint sufficiently stated a cause of action for retaliatory discharge. We granted review to address the issue of the proper standard for Tennessee courts to apply in ruling on a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted in light of the United States Supreme Court's recent decisions altering the federal standard in Twombly, 550 U.S. 544, and Iqbal, 129 S. Ct. 1937. In this appeal, Habitat and amici curiae Tennessee Defense Lawyers Association and The Center for Individual Freedom urge us to adopt the Twombly/Iqbal standard, which "retired" the notice pleading regime recognized in Conley v. Gibson, 355 U.S. 41 (1957), and followed for fifty years, in favor of a new "plausibility" standard. For the reasons discussed below, we decline to adopt the Twombly/Iqbal plausibility pleading standard.

### *Analysis*

### *1. The Tennessee Standards – Motion to Dismiss*

Tennessee Rule of Civil Procedure 8.01 requires that a pleading for relief "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." Rule 8.05(1) further provides:

> Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

When a complaint fails to comply with Rule 8, it is subject to dismissal by grant of a motion to dismiss for failure to state a claim upon which relief can be granted, as provided by Tennessee Rule of Civil Procedure 12.02(6). The standards by which our courts should assess and dispose of a Rule 12.02(6) motion to dismiss are well-established and have been clearly and consistently applied in Tennessee for nearly forty years, following the adoption of the Tennessee Rules of Civil Procedure in 1970.

-3-

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. Highwoods Props., Inc. v. City of Memphis, 297 S.W.3d 695, 700 (Tenn. 2009); Willis v. Tenn. Dep't of Corr., 113 S.W.3d 706, 710 (Tenn. 2003); Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., 986 S.W.2d 550, 554 (Tenn. 1999); Sanders v. Vinson, 558 S.W.2d 838, 840 (Tenn. 1977). The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. Leggett v. Duke Energy Corp., 308 S.W.3d 843, 851 (Tenn. 2010); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 696 (Tenn. 2002); Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn. 1994); Cornpropst v. Sloan, 528 S.W.2d 188, 190 (Tenn. 1975) (overruled on other grounds by McClung v. Delta Square Ltd. P'ship, 937 S.W.2d 891, 899-900 (Tenn. 1996)). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" Brown v. Tenn. Title Loans, Inc., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 516 (Tenn. 2005)); see Edwards v. Allen, 216 S.W.3d 278, 284 (Tenn. 2007); White v. Revco Disc. Drug Ctrs., Inc., 33 S.W.3d 713, 718 (Tenn. 2000); Holloway v. Putnam Cnty., 534 S.W.2d 292, 296 (Tenn. 1976).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" Tigg v. Pirelli Tire Corp., 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting Trau-Med, 71 S.W.3d at 696); see Leach v. Taylor, 124 S.W.3d 87, 92-93 (Tenn. 2004); Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997); Bellar v. Baptist Hosp., Inc., 559 S.W.2d 788, 790 (Tenn. 1978); see also City of Brentwood v. Metro. Bd. of Zoning Appeals, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004) (holding that courts "must construe the complaint liberally in favor of the plaintiff by . . . giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts"). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 857 (Tenn. 2002); see Lanier v. Rains, 229 S.W.3d 656, 660 (Tenn. 2007); Doe v. Sundquist, 2 S.W.3d 919, 922 (Tenn. 1999); Pemberton v. Am. Distilled Spirits Co., 664 S.W.2d 690, 691 (Tenn. 1984); Fuerst v. Methodist Hosp. S., 566 S.W.2d 847, 848 (Tenn. 1978); Ladd v. Roane Hosiery, Inc., 556 S.W.2d 758, 759-60 (Tenn. 1977). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. Brown, 328 S.W.3d at 855; Stein, 945 S.W.2d at 716.

Under Tennessee Rule of Civil Procedure 8, Tennessee follows a liberal notice pleading standard, see Leach, 124 S.W.3d at 92-93, which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and

court. Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 103 (Tenn. 2010); see also Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5–4(a) (3d ed. 2009) ("The essential function of the pleadings is simply to give notice of a claim or defense. History, as Professors Wright and Miller point out, has shown that the pleadings cannot successfully do more.") (footnotes omitted). Our state's notice pleading regime is firmly established and longstanding; this Court recognized well before the Tennessee Rules of Civil Procedure were adopted that "[t]he object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried." Hammett v. Vogue, Inc., 165 S.W.2d 577, 579 (Tenn. 1942).

To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state "'the facts upon which a claim for relief is founded.'" Smith v. Lincoln Brass Works, Inc., 712 S.W.2d 470, 471 (Tenn. 1986) (quoting W & O Constr. Co. v. City of Smithville, 557 S.W.2d 920, 922 (Tenn. 1977)). A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." Abshure, 325 S.W.3d at 103-04. "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." Id. at 104. Thus, as we observed in Leach,

> "While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, *it must contain direct allegations on every material point* necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, *or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial*."

124 S.W.3d at 92 (quoting Donaldson v. Donaldson, 557 S.W.2d 60, 61 (Tenn. 1977)) (alteration in original); accord Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 399 (Tenn. 2002). Moreover, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts. Riggs v. Burson, 941 S.W.2d 44, 47-48 (Tenn. 1997).

### 2. The Federal Standard – *Twombly* and *Iqbal*

Until 2007, the Tennessee standard on a Rule 12.02(6) motion to dismiss was generally the same as the federal standard under the similarly worded Federal Rule of Civil Procedure 12(b)(6). Both followed the Conley formulation of "the accepted rule that a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. This Court adopted the Conley standard in Ladd, 556 S.W.2d at 759-60, and we have routinely applied it many times since Ladd was decided in 1977.[1]

In Twombly, the Supreme Court announced the "retirement" of the Conley standard in favor of a new "plausibility" pleading standard. 550 U.S. at 563. The Twombly plaintiffs alleged that major telecommunications providers violated the Sherman Antitrust Act, 15 U.S.C. § 1, by engaging in parallel conduct unfavorable to competition and by agreeing to refrain from competing with one another. 550 U.S. at 550-51. The Court observed that the allegation of parallel conduct was factually ambiguous, stating that "[t]he inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." Id. at 554. The Court held that in an antitrust action, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice," and that allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id. at 556-57.

The Twombly Court stated the following in formulating its new plausibility pleading standard:

we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . .

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct

_____

[1] See, e.g., Leggett, 308 S.W.3d at 851; Highwoods Props., 297 S.W.3d at 700; Lanier, 229 S.W.3d at 660; Leach, 124 S.W.3d at 92; Willis, 113 S.W.3d at 710; Crews, 78 S.W.3d at 855; Givens, 75 S.W.3d at 391; Trau-Med, 71 S.W.3d at 696; White, 33 S.W.3d at 718; Doe, 2 S.W.3d at 922; Bell ex rel. Snyder, 986 S.W.2d at 554; Stein, 945 S.W.2d at 716; Cook ex rel. Uithoven, 878 S.W.2d at 938; Smith, 712 S.W.2d at 471; Pemberton, 664 S.W.2d at 691; Fuerst, 566 S.W.2d at 848; Bellar, 559 S.W.2d at 790.

consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.

Id. at 556, 557 (alteration in original).

The Twombly formulation of the plausibility standard left open many questions about the state of federal pleading practice.[2] The Supreme Court answered some of these questions two years later in Iqbal, 129 S. Ct. 1937. The Court made it clear in Iqbal that the Twombly plausibility standard applies in all federal civil actions.[3] Id. at 1953. The Court elaborated on its plausibility pleading standard formulation as follows:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citations omitted) (quoting Twombly, 550 U.S. at 556-57, 570). The Court observed "[t]wo working principles" underlying the Twombly decision:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

---

[2] See, e.g., Joseph A. Seiner, The Trouble With Twombly: A Proposed Pleading Standard for Employment Discrimination Cases, 2009 U. Ill. L. Rev. 1011, 1038 (2009) (hereinafter "Seiner, The Trouble With Twombly") ("Despite the fact that Twombly is a very recent decision, it has already generated significant confusion and conflicting decisions in the appellate courts."); Z.W. Julius Chen, Note, Following the Leader: Twombly, Pleading Standards, and Procedural Uniformity, 108 Colum. L. Rev. 1431, 1431 (2008) ("This new [Twombly] paradigm has confounded the legal community since its inception.").

[3] The language employed by the Court in Twombly left open the possibility that the Court intended to limit the application of the plausibility standard to the antitrust setting. Twombly, 550 U.S. at 553 ("We granted certiorari to address the proper standard for pleading an antitrust conspiracy . . . ."); id. at 554-55 ("This case presents the antecedent question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act.").

elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

Id. at 1949-50 (citations omitted).

Thus, under the Twombly/Iqbal plausibility pleading standard, a trial court presented with a Rule 12(b)(6) motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. The trial court is then tasked with determining whether the well-pleaded facts, assumed as true, "plausibly give rise to an entitlement to relief." Id. The Iqbal Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. If the facts pleaded "do not permit the court to infer more than the mere possibility of misconduct," then the complaint is insufficient because it "has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

The Tennessee Court of Appeals has cited Twombly and/or Iqbal in eight opinions[4] since the Supreme Court decided Twombly, and on one occasion has purported to "recognize [Twombly's] applicability" in Tennessee. Hermosa Holdings, 2009 WL 711125, at *3. However, in Morris v. Grusin, the Court of Appeals, urged by the defendants to adopt the Twombly/Iqbal standard, correctly stated that

[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts. The Court of

---

[4] See Deja Vu of Nashville , Inc. v. Metro. Gov't, 311 S.W.3d 913, 918-19 (Tenn. Ct. App. 2009); State ex rel. Watson v. Waters, No. E2009-01753-COA-R3-CV, 2010 WL 3294109, at *4 (Tenn. Ct. App. Aug. 20, 2010); Jackson v. Metro. Gov't, No. M2009-01970-COA-R3-CV, 2010 WL 2287639, at *3 (Tenn. Ct. App. June 7, 2010); Morris v. Grusin, No. W2009-00033-COA-R3-CV, 2009 WL 4931324, at *3 (Tenn. Ct. App. Dec. 22, 2009); Steele v. Ritz, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *2 n.3 (Tenn. Ct. App. Dec. 16, 2009); W. Express, Inc. v. Brentwood Servs., Inc., No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *9 (Tenn. Ct. App. Oct. 26, 2009); Hermosa Holdings, Inc. v. Mid-Tenn. Bone & Joint Clinic, P.C., No. M2008-00597-COA-R3-CV, 2009 WL 711125, at *3 (Tenn. Ct. App. Mar. 16, 2009); Ind. State Dist. Council of Laborers v. Brukardt, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *7 (Tenn. Ct. App. Feb. 19, 2009).

Appeals has no authority to overrule or modify [the] Supreme Court's opinions. Accordingly, we are not at liberty to adopt the more liberal [Twombly/Iqbal] standard for dismissing complaints for failure to state a claim urged by Defendants.

2009 WL 4931324, at *4 (first alteration in original) (citations and internal quotation marks omitted); see also Brukardt, 2009 WL 426237, at *7 (stating that "this Court is not in a position to adopt the stricter Twombly standard").

This case squarely presents the question of whether Tennessee should adopt the federal Twombly/Iqbal plausibility pleading standard. Although federal judicial decisions "interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule," they "are non-binding even when the state and federal rules are identical." Harris v. Chern, 33 S.W.3d 741, 745 n.2 (Tenn. 2000); see also Bowman v. Henard, 547 S.W.2d 527, 530 (Tenn. 1977). We decline to adopt the new plausibility standard and adhere, for the following reasons, to the notice pleading standard and the principles discussed in section 1 above that have long governed Tennessee pleading practice.

First, the Twombly and Iqbal decisions reflect a significant and substantial departure from the United States Supreme Court's prior interpretations of Fed. R. Civ. P. 8 and the seventy-year history of a liberal notice pleading standard as envisioned by the Federal Rules of Civil Procedure and recognized in Conley. The Washington Supreme Court, in a recent decision rejecting the federal plausibility standard, described it as "a drastic change in court procedure." McCurry v. Chevy Chase Bank, FSB, 233 P.3d 861, 863 (Wash. 2010) (en banc). Despite the Court's insistence in a Twombly footnote that "we do not apply any 'heightened' pleading standard," 550 U.S. at 569 n.14, academic commentators have been in general agreement that Twombly/Iqbal affected a major change in pleading practice and jurisprudence. See, e.g., Thomas P. Gressette, Jr., The Heightened Pleading Standard of *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*: A New Phase in American Legal History Begins, 58 Drake L. Rev. 401, 420 (2010) ("Twombly stands for the most remarkable shift in pleadings requirements since the implementation of Conley's highly liberal construction of the already generous Rule 8."); Arthur R. Miller, From *Conley* to *Twombly* to *Iqbal*: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 15-16 (2010) (hereinafter "Miller, A Double Play") ("Recognizing the importance of Twombly and Iqbal, most – but not all – observers believe these two cases represent a major departure from the Court's established pleading jurisprudence . . . .") (footnotes omitted); Alexander A. Reinert, The Costs of Heightened Pleading, 86 Ind. L.J. 119, 122 (2011) ("[T]here is close to a consensus among academic observers that the Iqbal/Twombly pleading standard marks a sharp break with the past") (footnote omitted); A. Benjamin Spencer, Plausibility Pleading, 49 B.C. L. Rev. 431, 431-32 (2008) ("In a startling move by the U.S. Supreme Court, the

seventy-year-old liberal pleading standard of [Rule] 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."). Notably, the Court in Iqbal did not mention the concept of "notice" in its discussion and formulation of the plausibility standard, nor did the Court cite any pre-Twombly decision in that discussion.

The result of this change has been a loss of clarity, stability, and predictability in federal pleadings practice. See Kevin M. Clermont & Stephen C. Yeazell, Inventing Tests, Destabilizing Systems, 95 Iowa L. Rev. 821, 832 (2010) ("The two cases profoundly changed the law of pleading by adopting a procedural mechanism without precedent in the law. No prior model exists to help us understand how to test factual sufficiency now."); Miller, A Double Play, 60 Duke L.J. at 2, 21-22 ("Twombly and Iqbal have destabilized both the pleading and the motion-to-dismiss practices as they have been known for over sixty years. . . . Most significantly, the decisions have unmoored our long-held understanding that the motion to dismiss simply tests a pleading's notice-giving and substantive-law sufficiency."); Seiner, The Trouble With *Twombly*, 2009 U. Ill. L. Rev. at 1038 (observing that Twombly "has already generated significant confusion and conflicting decisions in the appellate courts").[5]

If this Court were to follow the Supreme Court's lead in Twombly/Iqbal and "reinterpret" Tennessee Rule of Procedure 8 to mandate the new plausibility standard, it would similarly require the substantial alteration or abandonment of pleading principles that have been stable and predictable for forty years in Tennessee. See Colby v. Umbrella, Inc., 955 A.2d 1082, 1086-87 n.1 (Vt. 2008) (Whether Twombly "creates a new and heightened pleading standard . . . and it is arguable in light of conflicting interpretations of Twombly, . . . we have relied on the Conley standard for over twenty years, and are in no way bound by federal jurisprudence in interpreting our state pleading rules . . . and are unpersuaded . . . that we should now abandon it for a heightened standard."); McCurry, 233 P.3d at 864 (finding no "basis to fundamentally alter our interpretation of [Washington

---

[5] See also Kevin M. Clermont, Three Myths About *Twombly-Iqbal*, 45 Wake Forest L. Rev. 1337, 1338 (2010) (noting "the three destabilizing attributes of Twombly and Iqbal: their doctrine is thoroughly novel, quite uncertain, and shakily resting on a foundation laid by a faulty legal process"). A number of scholarly commentators, however, have either supported the pleading changes arising from Twombly and Iqbal or questioned whether the decisions are being misconstrued by detractors. See, e.g., Victor E. Schwartz & Christopher E. Appel, Rational Pleading in the Modern World of Civil Litigation: The Lessons and Public Policy Benefits of *Twombly* and *Iqbal*, 33 Harv. J.L. & Pub. Pol'y 1107, 1110 (2010); Bradley Scott Shannon, I Have Federal Pleading All Figured Out, 61 Case W. Res. L. Rev. 453, 455-56 (2010); Douglas G. Smith, The Evolution of a New Pleading Standard: *Ashcroft v. Iqbal*, 88 Or. L. Rev. 1053, 1057-58 (2009).

Superior Court Civil Rule] 12(b)(6) that has been in effect for nearly 50 years").[6] In making this determination we are mindful of the doctrine of stare decisis, which is "'one of commanding importance, giving, as it does, firmness and stability to principles of law.' Stability in the law allows individuals to plan their affairs and to 'safely judge of their legal rights.'" In re Estate of McFarland, 167 S.W.3d 299, 306 (Tenn. 2005) (quoting J.T. Fargason Co. v. Ball, 159 S.W. 221, 222 (Tenn. 1913)).

Second, the plausibility pleading standard incorporates an evaluation and determination of likelihood of success on the merits – a judicial weighing of the facts pleaded to see if they "plausibly" present a claim for relief – at the earliest stage of the proceedings, before a sworn denial is even required. As the Washington Supreme Court observed,

> [t]he new Fed. R. Civ. P. 12(b)(6) standard effectively reads "plausible" into the rule, as follows: "failure to state a [plausible] claim upon which relief can be granted." This adds a determination of the likelihood of success on the merits, so that a trial judge can dismiss a claim, even where the law does provide a remedy for the conduct alleged by the plaintiff, if that judge does not believe it is plausible the claim will ultimately succeed.

McCurry, 233 P.3d at 863; see also Miller, A Double Play, 60 Duke L.J at 17-18, 30 ("[T]he center of gravity of federal litigation has been shifted forward in time and the Court has accorded the Rule 12(b)(6) motion to dismiss potentially life-or-death significance for the pleader of an affirmative claim. . . . In other words, a trial-like scrutiny of the merits is being shifted to an extremely early point in the pretrial phase.").

This fact-weighing and merits-based determination aspect of the Twombly/Iqbal standard is at odds with the well-established principle in Tennessee that a Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. Highwoods Props., 297 S.W.3d at 700; Willis, 113 S.W.3d at 710; Bell ex rel. Snyder, 986 S.W.2d at 554; Sanders, 558 S.W.2d at 840. It also conflicts with the strong preference embodied in the Tennessee Rules of Civil Procedure that cases stating a valid legal claim brought by Tennessee citizens be decided on their merits. Jones v. Prof'l Motorcycle Escort Serv., L.L.C., 193 S.W.3d 564, 572 (Tenn. 2006) ("The Tennessee Rules of Civil Procedure are intended 'to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties.'")

---

[6] But see also Doe v. Bd. of Regents of Univ. Of Neb., 788 N.W.2d 264, 274-78 (Neb. 2010) (adopting the Twombly/Iqbal standard); Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 890 (Mass. 2008) (adopting the Twombly standard in a pre-Iqbal decision), Sisney v. Best Inc., 754 N.W.2d 804, 807-09 (S.D. 2008) (adopting the Twombly standard in a pre-Iqbal decision).

(quoting Karash v. Pigott, 530 S.W.2d 775, 777 (Tenn. 1975)); see also Patton v. Dixon, 58 S.W. 299, 301 (Tenn. 1900). Furthermore, the Twombly/Iqbal standard requiring the trial court to scrutinize and weigh the well-pleaded facts to determine if they present a plausible claim, and allowing the court to dismiss the case at the pleading stage if it determines, in light of its "judicial experience and common sense," Iqbal, 129 S. Ct. at 1950, that the claim is not plausible, raises potential concerns implicating the Tennessee constitutional mandate that "the right of trial by jury shall remain inviolate." Tenn. Const. art. I, § 6.[7]

Third, the tests formulated by Twombly and Iqbal in attempting to guide courts that must now determine the plausibility of a claim on the pleading alone are problematic. Under the first prong of Iqbal's prescribed analysis, a court may discard and not assume the truth of allegations that the court determines are merely "labels and conclusions," 129 S. Ct. at 1949, "naked assertions devoid of further factual enhancement," id., or "mere conclusory statements." Id. (quoting Twombly, 550 U.S. at 555, 557) (internal quotation marks and brackets omitted). In many instances, however, the distinction between whether an allegation is a "fact" or a "conclusion" is fine, blurry, and hard to detect. One leading civil procedure commentator has observed that

> [t]he fact-legal conclusion dichotomy presented by Twombly's first step is shadowy at best. Worse, the categories are likely to generate motion practice unrelated to the merits. Moreover, it is precisely what the drafters of the original Rules intentionally rejected as counterproductive and sought to eliminate by substituting "short and plain" and "claim for relief" for any reference to the troublesome code categories of "facts," "conclusions," "evidence," and "cause of action."

Miller, A Double Play, 60 Duke L.J. at 24. Professor Miller, arguing that the fact/conclusion dichotomy and the plausibility standard "has granted virtually unbridled discretion to district court judges," id. at 22, further observed that

> [t]he conclusion category is being applied quite expansively, embracing allegations that one reasonably might classify as factual and therefore potentially jury triable, including the key allegations in Iqbal itself. It is now

---

[7] See also Kenneth S. Klein, *Ashcroft v. Iqbal* Crashes Rule 8 Pleading Standards on to Unconstitutional Shores, 88 Neb. L. Rev. 261, 262, 287 (2009) ("The collision between Iqbal and the Seventh Amendment, simply stated, is that under the historical test it is unconstitutional to give a judge the power to weigh the factual heft of a complaint at the outset of a civil case and to dismiss it as insufficient. . . . There can be no debate that this is not a mere incident of technical procedure – this is a weighing of evidence, pre-discovery, with the potential consequence of dismissal of potentially meritorious litigation.").

fairly common for federal courts to channel words used in <u>Iqbal</u> and characterize allegations as merely "formulaic," "conclusory," "speculative," "cryptic," "generalized," or "bare." By transforming arguably factual allegations into legal conclusions and refusing to draw favorable inferences from them – thereby ignoring portions of the complaint – judges are both failing to construe the complaint in favor of the pleader as prior Rule 12(b)(6) doctrine required and performing functions previously thought more appropriate for the factfinder. And they are doing so based only on the complaint.

<u>Id.</u> at 24-25 (footnotes omitted). The difficulty presented by the elevated status of the fact/conclusion dichotomy formulated by <u>Twombly/Iqbal</u> is seen in an examination of the <u>Iqbal</u> decision itself. In <u>Iqbal</u>, the five-justice majority rejected as "conclusions" not requiring the assumption of truth the following allegations in Iqbal's complaint: (1) that the "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject'" respondent Iqbal "to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'"; (2) that petitioner "Ashcroft was the 'principal architect' of this invidious policy"; and (3) that petitioner "Mueller was 'instrumental' in adopting and executing it." 129 S. Ct. at 1951 (alteration in original). The four-justice dissent, written by Justice Souter (<u>Twombly</u>'s author), viewed these allegations quite differently, namely, as "factual assertions" entitled to a presumption of truth:

The complaint thus alleges, at a bare minimum, that Ashcroft and Mueller knew of and condoned the discriminatory policy their subordinates carried out. Actually, the complaint goes further in alleging that Ashcroft and Muller affirmatively acted to create the discriminatory detention policy. If these factual allegations are true, Ashcroft and Mueller were, at the very least, aware of the discriminatory policy being implemented and deliberately indifferent to it.

. . . .

The majority says that these are "bare assertions" that, "much like the pleading of conspiracy in <u>Twombly</u>, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" and therefore are "not entitled to be assumed true." The fallacy of the majority's position, however, lies in looking at the relevant assertions in isolation. The complaint contains specific allegations that, in the aftermath of the September 11 attacks, the Chief of the FBI's International Terrorism Operations Section

-13-

and the Assistant Special Agent in Charge for the FBI's New York Field Office implemented a policy that discriminated against Arab Muslim men, including Iqbal, solely on account of their race, religion, or national origin. Viewed in light of these subsidiary allegations, *the allegations singled out by the majority as "conclusory" are no such thing*.

Id. at 1959, 1959-61 (Souter, J., dissenting) (emphasis added) (citations omitted). The dissent concluded that "the majority's holding that the statements it selects are conclusory cannot be squared with its treatment of certain other allegations in the complaint as nonconclusory." Id. at 1961.

The differing viewpoints of the Iqbal majority and dissent illustrate a fundamental problem with the fact/conclusion dichotomy: many, if not most, allegations can be fairly described as at least having a "conclusory" aspect. The problem is generally avoided by adhering to the principles that are already well established in Tennessee for ruling on a motion to dismiss. The texts of Federal Rule of Civil Procedure 8 and Tennessee Rule of Civil Procedure 8.01 indicate that the drafters of the rules also aspired to avoid this problem: the rules do not include terms such as "fact," "conclusion," or "cause of action."

This is not to say that there is absolutely no place for drawing an analytical distinction between factual assertions and legal conclusions, however; as noted, we stated in Riggs that "the legal conclusions set forth in a complaint are not required to be taken as true." 941 S.W.2d at 48 (citing Dobbs v. Guenther, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)). Riggs, however, involved an unusual "allegation" that was quintessentially a legal conclusion, or perhaps more accurately, a legal argument couched as a factual assertion – that a statute was unconstitutional. Id. We reached the obvious conclusion that "[t]he plaintiffs' allegations that the statute violated due process and equal protection under the United States and Tennessee Constitutions and suspended general law in violation of the Tennessee Constitution were legal conclusions that should not have been taken as true." Id. Our review of Tennessee motion-to-dismiss jurisprudence as outlined in section 1 above confirms the observation of Professors Banks and Entman that the fact/conclusion dichotomy has rarely been invoked in Tennessee. Tennessee Civil Procedure, § 5-4(c).

Fourth, a number of commentators and observers have noted the possibility that the Twombly/Iqbal standard requiring a demonstration of plausibility at the pre-discovery phase of the case results in the disproportionate dismissal of certain types of potentially meritorious claims that require discovery to be proven, including actions for violations of civil rights, employment discrimination, antitrust, and conspiracy. This "information asymmetry" problem has been described as follows:

It is uncertain how plaintiffs with potentially meritorious claims are expected to plead with factual sufficiency without the benefit of some discovery, especially when they are limited in terms of time or money, or have no access to important information that often is in the possession of the defendant, especially when the defendant denies access.

. . . .

This problem of information asymmetry . . . presents itself in many litigation contexts. It is prevalent in actions challenging the conduct of large institutions – for example, antitrust and securities cases – when the necessary information relating to issues such as fraud, conspiracy, price-fixing, and corporate governance can be found only in the defendant's files and computers. The problem is exacerbated in multiple-defendant situations in which access to information is critical to indicating the alleged wrongdoing in order to focus on the alleged wrongdoer.

The same is true of questions like intent and malice. A similar asymmetry exists in other important litigation contexts such as actions against governmental entities. Particularly affected are civil rights and employment-discrimination cases, in which issues of motivation, state of mind, and insidious practices are hidden by agents and employees or are buried deep within an entity's records. Discrimination in hiring, promotion, or employee discipline depends on comparative data drawn from the employer's records that simply are inaccessible absent discovery.

Miller, A Double Play, 60 Duke L.J. at 43, 45-46 (footnotes omitted). As a result,

[u]nder plausibility pleading, one has no confidence that a plaintiff's dismissed claim was frivolous or nonmeritorious because it permits the dismissal of complaints that assert wrongdoing, but merely offer supporting factual allegations consistent with – rather than factually suggestive of – liability. Thus, although discovery might reveal facts that prove liability, that opportunity is preemptively foreclosed and the investigation for supportive facts that the rules contemplate never occurs.

Spencer, Plausibility Pleading, 49 B.C. L. Rev. at 481 (footnote omitted); see also Goutam U. Jois, *Pearson, Iqbal, and Procedural Judicial Activism*, 37 Fla. St. U. L. Rev. 901, 903 (2010) (arguing that Iqbal and Pearson v. Callahan, 555 U.S. 223 (2009), "will work a disservice to our nation's promise of permitting victims of civil rights violations to achieve

redress through civil litigation"); Ramzi Kassem, <u>Implausible Realities:</u> *Iqbal*'s <u>Retrenchment of Majority Group Skepticism Towards Discrimination Claims</u>, 114 Penn St. L. Rev. 1443, 1446 (2010) (arguing that "[d]iscrimination claims are particularly vulnerable to an unfavorable application of dispositive judicial discretion at the threshold stage"); Elizabeth M. Schneider, <u>The Changing Shape of Federal Civil Pretrial Practice: The</u> <u>Disparate Impact on Civil Rights and Employment Discrimination Cases</u>, 158 U. Pa. L. Rev. 517, 519 (2010) ("[T]he greatest impact of this change in the landscape of federal pretrial practice is the dismissal of civil rights and employment discrimination cases from federal courts in disproportionate numbers."). Early academic empirical studies following <u>Twombly</u> and <u>Iqbal</u> have tended to confirm the concerns regarding a possible disproportionate impact on civil rights and employment discrimination cases. <u>See</u> Patricia W. Hatamyar, <u>The Tao of</u> <u>Pleading: Do</u> *Twombly* <u>and</u> *Iqbal* <u>Matter Empirically?</u>, 59 Am. U. L. Rev. 553, 556-57 (2010); Seiner, <u>The Trouble With</u> *Twombly*, 2009 U. Ill. L. Rev. at 1026-38; Kendall W. Hannon, Note, <u>Much Ado About</u> *Twombly*? <u>A Study on the Impact of</u> *Bell Atlantic Corp. v.* *Twombly* <u>on 12(b)(6) Motions</u>, 83 Notre Dame L. Rev. 1811, 1836-38 (2008). Thus, although it may still be too soon to fully gauge the impact of the new plausibility standard, it is at least arguable that it has operated to deny access to justice in the federal courts to possibly meritorious claimants for civil rights violations and employment discrimination.

Fifth, neither Habitat nor amici curiae in the present case have presented evidence showing that the policy concerns cited by the Court in <u>Twombly</u> and <u>Iqbal</u> are present in Tennessee to the extent they exist in the federal judicial system, much less that they warrant "such a drastic change in court procedure," <u>McCurry</u>, 233 P.3d at 863, as the defendant asks us to affect here. The Washington Supreme Court made a similar observation in <u>McCurry</u> in stating:

> The Supreme Court's plausibility standard is predicated on policy determinations specific to the federal trial courts. The <u>Twombly</u> Court concluded: federal trial courts are incapable of adequately preventing discovery abuses, weak claims cannot be effectively weeded out early in the discovery process, and this makes discovery expensive and encourages defendants to settle "largely groundless" claims. <u>See</u> 550 U.S. at 557-58, 559, 127 S. Ct. 1955. Neither party has shown these policy determinations hold sufficiently true in the Washington trial courts to warrant such a drastic change in court procedure.
>
> Nor has either party here addressed countervailing policy considerations. For example, do current discovery expenses justify plaintiffs' loss of access to that discovery and general access to the courts, particularly in cases where evidence is almost exclusively in the possession of defendants?

> Could runaway discovery expenses be addressed by better means – perhaps involving more court oversight of the discovery process or a change in the discovery rules?

Id.

The policy concerns cited by the Court in Twombly – the threat of expensive and/or abusive discovery practices leading to the settlement of "even anemic cases," 550 U.S. at 559, – should not be lightly dismissed. However, it is clear that such a broad and sweeping change in the procedural landscape as has been discussed here should come by operation of the normal rule-making process, not by judicial fiat in the limited context of a single case.[8] As a constitutional matter, this Court "has the inherent power to promulgate rules governing the practice and procedure of the courts of this state," and "this power cannot be constitutionally exercised by any other branch of government." State v. Mallard, 40 S.W.3d 473, 481 (Tenn. 2001); see also Tenn. Code Ann. §§ 16-3-401 to -402 (2009). The ordinary rule-making and amendment procedure provides for a broader discussion and examination of the policies at issue and allows for input from the advisory commission, see Tenn. Code Ann. § 16-3-601 (2009), and members of the bench, bar, and general public. The Supreme Courts in several of our sister states have reached the same conclusion. Cullen v. Auto-Owners Ins. Co., 189 P.3d 344, 347 (Ariz. 2008) (en banc) (holding that "Arizona has not revised the language or interpretation of Rule 8 in light of Twombly" and that any change must come through the Arizona rule-making process); McCurry, 233 P.3d at 864 ("The appropriate forum for revising the Washington rules is the rule-making process."); see also Roth v. DeFeliceCare, Inc., 700 S.E.2d 183, 197 (W. Va. 2010) (Benjamin, J., dissenting) (stating that it is "preferable that we consider [the adoption of a heightened pleading

_____

[8] Moreover, one study of empirical data and the judicial decisions following Twombly and Iqbal concludes that the "fundamental assumption" of the Court in formulating the new plausibility pleading standard, that "notice pleading lets in too many meritless cases, and heightened pleading will keep them out," is unsupported by the evidence. Reinert, The Costs of Heightened Pleading, 86 Ind. L.J. at 119-20. Professor Reinert's study concludes that

> [t]here is, however, no empirical basis supporting the assumption that heightened pleading standards – either the plausibility standard ushered in by Iqbal and Twombly or the closely related "fact pleading" standard that has always lurked as a competitor to notice pleading – are more efficient filters than Conley's notice pleading standard. . . . The data reported here suggest that the common wisdom among supporters of heightened pleading along the lines of Iqbal and Twombly cannot be supported empirically. Rules that subject thin pleadings to greater scrutiny and dismissal do not do a better job than notice pleading of filtering out meritless claims.

Id. at 125, 126.

standard] in the reflection of rule-making rather than in the vacuum of an individual case before us on appeal").[9]

In summary, it must be remembered that we are addressing the standard in assessing the sufficiency of a single document filed at the very beginning of a case – the complaint. Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism. Rule 8.01 has not been amended and still only requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." We decline to reinterpret Rule 8 to require a pleader to demonstrate "plausibility" and continue to adhere to the well established standards set forth in section 1 of this opinion.

Applying these standards to Ms. Webb's amended complaint in the present case, we affirm the Court of Appeals' holding that it states a cause of action for retaliatory discharge under the TPPA and Tennessee common law. The TPPA, Tennessee Code Annotated section 50-1-304, creates a cause of action for retaliatory discharge by providing that:

> (b) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.
>
> . . . .
>
> (d)(1) Any employee terminated in violation of subsection (b) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled.

Tenn. Code Ann. § 50-1-304.[10] A claimant has the burden of proving the following four elements to prevail on his or her statutory retaliatory discharge claim:

---

[9] See also Paul D. Carrington, Politics and Civil Procedure Rulemaking: Reflections on Experience, 60 Duke L.J. 597, 648-57 (2010).

[10] But see 2011 Tenn. Pub. Acts 461 (amending Tennessee Code Annotated section 50-1-304 and enacting Tennessee Code Annotated section 50-1-701) (effective on and applicable to causes of action accruing on or after June 10, 2011).

(1)     the plaintiff was an employee of the defendant;

(2)     the plaintiff refused to participate in or remain silent about illegal activity;

(3)     the defendant employer discharged or terminated the plaintiff's employment; and

(4)     the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

Sykes v. Chattanooga Hous. Auth., __ S.W.3d __, ___, No. E2008-00525-SC-R11-CV, 2011 WL 2517145, at *6 (Tenn. June 24, 2011); see also Voss v. Shelter Mut. Ins. Co., 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997).

A claimant alleging a claim of common law retaliatory discharge has the burden of proving the following four elements of the claim:

(1)     that an employment-at-will relationship existed;

(2)     that the employee was discharged;

(3)     that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and

(4)     that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

Kinsler v. Berkline, LLC, 320 S.W.3d 796, 800 (Tenn. 2010); accord Gossett v. Tractor Supply Co., Inc., 320 S.W.3d 777, 781 (Tenn. 2010) (citing Crews v. Buckman Labs. Int'l, 78 S.W.3d 852, 862 (Tenn. 2002)).

Ms. Webb's amended complaint alleges that she was an employee of Habitat who was terminated for her complaints regarding, and unwillingness to implement, participate in or remain silent about, discriminatory and illegal policies that Habitat's management requested staff members to implement. Construing "'the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences,'" Tigg, 232 S.W.3d at 31-32 (quoting Trau-Med, 71 S.W.3d at 696), it is not apparent from the face of the amended complaint that Ms. Webb "can prove no set of facts in support of the claim that would entitle [her] to relief." Crews, 78 S.W.3d at 857. The amended complaint specifically refers to the statute upon which Ms. Webb is relying to state her claim, Tenn. Code Ann. § 50-1-304, and thus comports with Rule 8.05(1). The amended complaint, while

-19-

not a model of pleading, provides Habitat with sufficient notice of the claims she is alleging and sufficiently pleads a legal cause of action.

### *Conclusion*

The judgment of the Court of Appeals is affirmed, and the case is remanded to the Circuit Court for Davidson County for further action as may be necessary, consistent with this opinion. Costs on appeal are assessed to the appellant, Nashville Area Habitat for Humanity, Inc., and its surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE