IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 17, 2017 Session

## NANCY YOUNGBLOOD EX REL. ESTATE OF DANIEL VAUGHN V. RIVER PARK HOSPITAL, LLC

**Appeal from the Circuit Court for Warren County**
**No. 559     Larry B. Stanley, Judge**

_____

### No. M2016-02311-COA-R3-CV

_____

On July 11, 2015, Daniel Vaughn, an 86-year-old patient, was recovering from surgery in the intensive care unit of the defendant River Park Hospital. A nurse brought Mr. Vaughn some coffee, after which she left the room. He spilled the coffee on himself, suffering burns to his body. Nancy Youngblood, the executor of Mr. Vaughn's estate, brought this action alleging that, given his condition, he "should not have been left alone to manage an extremely hot beverage." River Park, arguing that her claim is a health care liability action subject to the Tennessee Health Care Liability Act (THCLA), Tenn. Code Ann. § 29-26-101 *et seq.* (2012 & Supp. 2017), moved to dismiss based on plaintiff's failure to provide pre-suit notice and a certificate of good faith as required by the THCLA. Plaintiff argued that her claim does not fall within the definition of a "health care liability action." The trial court disagreed and dismissed her action. We hold that the trial court correctly held her claim to be a health care liability complaint. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J.,W.S., and BRANDON O. GIBSON, J., joined.

John Robert Toy II, Murfreesboro, Tennessee, for the Appellant, Nancy Youngblood, Executrix of the Estate of Daniel Vaughn.

Bryan Essary and Lee T. Nutini, Nashville, Tennessee, for the Appellee, River Park Hospital, LLC, dba River Park Hospital.

1

# OPINION

## I.

Mr. Vaughn fell and broke his hip on July 10, 2015. He went to River Park and was scheduled for immediate surgery. It is not clear from the complaint whether the surgery took place on July 10 or July 11, but on the later date, a doctor informed his family that the surgery went well. That same day, the nurse brought him a cup of coffee in his intensive care unit. The essence of plaintiff's claim, as quoted from the complaint, is as follows:

> Mr. Vaughn was an 86 year old man; who was in ICU following a major surgery; was on pain medication; had visible tremors in his hand; and had an O2 monitor on his index finger. Mr. Vaughn should not have been left alone to manage an extremely hot beverage.

(Reformatted with paragraph numbering in original omitted.)

It is undisputed that plaintiff did not provide pre-suit notice to River Park. Such notice is required of "any person . . . asserting a claim for health care liability." Tenn. Code Ann. § 29-26-121(a)(1). Furthermore, she did not file a certificate of good faith with the complaint. Again, this is a requirement "[i]n any health care liability action in which expert testimony is required by § 29-26-115." Tenn. Code Ann. § 29-26-122(a). Following a hearing, the trial court dismissed plaintiff's action with prejudice, succinctly stating that "the allegations of negligence . . . clearly fall within the definition of a 'health care liability action.' " Plaintiff timely filed a notice of appeal.

## II.

The issue presented is whether the trial court erred in dismissing plaintiff's claim based upon the court's determination that it falls within the THCLA's definition of a "health care liability action."[1]

---

[1] This Court has held on several recent occasions that "[t]he need for expert proof will not lie if the matter is within the common knowledge of a layperson, and if there is no need for expert proof, a plaintiff's complaint will not fail for failure to attach a certificate of good faith under section 29–26–122." *Redick v. St. Thomas Midtown Hosp.*, 515 S.W.3d 853, 857 (Tenn. Ct. App. 2016) (quoting *Newman v. Guardian Healthcare Providers, Inc.*, No. M2015-01315-COA-R3-CV, 2016 WL 4069052, at *5 (Tenn. Ct. App., filed July 27, 2016)); *Zink v. Rural/Metro of Tenn., L.P.*, No. E2016-01581-COA-R3-CV, 2017 WL 1659349, at *7 (Tenn. Ct. App., filed May 2, 2017). In this case, plaintiff has not alleged nor argued that her claim falls

2

## III.

Our standard of review is as recently stated by the Supreme Court in *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823-34 (Tenn. 2015):

> A motion to dismiss for failure to state a claim is the proper method for challenging whether a plaintiff has complied with the THCLA's pre-suit notice and certificate of good faith requirements. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). A motion to dismiss based upon Tennessee Rule of Civil Procedure 12.02(6) challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)).
>
> A defendant filing a motion to dismiss "admits the truth of all the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action." *Id*. (quoting *Webb*, 346 S.W.3d at 426 (alteration in original) (internal quotation marks omitted)). The resolution of such a motion is determined by examining the pleadings alone. *Id*.
>
> In adjudicating such motions, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id.* (citing *Webb*, 346 S.W.3d at 426; *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013)). A motion to dismiss should be granted only if it appears that " 'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.' " *Webb*, 346 S.W.3d at 426 (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). We review a lower court's decision on such a motion de novo without any presumption of correctness. *Phillips*, 442 S.W.3d at 237 (citing *Cullum*, 432 S.W.3d at 832).

---

within the "common knowledge" exception, so that issue is not before us.

3

**IV.**

The THCLA defines a "health care liability action" as

> any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]

Tenn. Code Ann. § 29-26-101(a)(1). It is undisputed that plaintiff's claims implicate a "health care provider." The THCLA defines "health care services" as follows:

> Health care services to persons includes care by health care providers, which includes care by physicians, nurses, licensed practical nurses, pharmacists, pharmacy interns or pharmacy technicians under the supervision of a pharmacist, orderlies, certified nursing assistants, advance practice nurses, physician assistants, nursing technicians and other agents, employees and representatives of the provider, *and also includes* staffing, *custodial or basic care*, positioning, *hydration and similar patient services*.

Tenn. Code Ann. § 29-26-101(b) (emphasis added). As this Court has recently observed,

> [t]his statutory definition is conclusive, and it casts a wide net over civil claims that arise within a medical setting. In fact, this Court has previously remarked that "it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." ***Osunde*** [***v. Delta Med. Ctr.***, 505 S.W.3d 875, 884-85 (Tenn. Ct. App. 2016)]. We hasten to add, however, that "whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." ***Id.*** at [885] n.6.

***Cordell v. Cleveland Tenn. Hosp., LLC***, No. M2016-01466-COA-R3-CV, 2017 WL 830434, at *5 (Tenn. Ct. App., filed Feb. 27, 2017); *accord **Newman***, 2016 WL 4069052, at *6 (noting "the broad ambit of the THCLA" in defining health care liability action).

To provide a full background of plaintiff's factual allegations, the following is a verbatim quote from the complaint, reformatted with numbering omitted:

4

At all times relevant to this action, the nursing staff referenced herein were employed by River Park and acting in the scope and course of their employment with River Park. On or about July 10, 2015, Mr. Vaughn fell and broke his hip, necessitating his transport by ambulance to River Park. Dr. Patel informed the family that Mr. Vaughn was cleared for surgery, being considered low-risk for immediate surgery. Dr. Patel also informed the family that Mr. Vaughn would be admitted to ICU following the surgery for at least 24 hours. On or about July 11, 2015, Dr. Peterson informed the family that the surgery went great.

At approximately 4:30pm on July 11, 2015, Ms. Youngblood received a call from Mr. Vaughn's nurse, Heather, asking if Ms. Youngblood knew where Mr. Vaughn's teeth were. Ms. Youngblood informed Heather that Ms. Youngblood ha[d] in fact taken Mr. Vaughn's teeth home by accident and would bring his teeth to the hospital right away. Ms. Youngblood was told by Heather that there was no need since the nursing staff had already taken care of Mr. Vaughn's dinner and that Ms. Youngblood should just wait until the following day to bring his teeth. Later in the evening of July 11, 2015, Ms. Youngblood received a phone call from Mr. Vaughn's pastor, Bro. Burns, informing Ms. Youngblood that Mr. Vaughn ha[d] spilled some coffee on himself and Mr. Vaughn was being treated by the nursing staff.

On July 12, 2015, Ms. Youngblood received another phone call from Heather asking when Ms. Youngblood planned to bring Mr. Vaughn's teeth to River Park. At no time during this phone call on the morning of July 12, 2015 did Heather or any other River Park staff mention the coffee spill to Ms. Youngblood. Ms. Youngblood arrived at the hospital around 12:30pm on July 12, 2015, and asked about the coffee spill incident. Ms. Youngblood was told that a nurse named Ashley had brought Mr. Vaughn a cup of coffee; placed the coffee on his bedside table; left the room; and returned to Mr. Vaughn upon hearing him cry out. Mr. Vaughn had apparently attempted to drink his coffee left by his nurse and spilled the coffee on himself.

5

Mr. Vaughn was an 86 year old man; who was in ICU following a major surgery; was on pain medication; had visible tremors in his hand; and had an O2 monitor on his index finger. Mr. Vaughn should not have been left alone to manage an extremely hot beverage. As a direct and proximate result of the above described events and actions of employees of River Park, Mr. Vaughn suffered serious personal injury. River Park is made the defendant to this action as it was River Park's agents, servants, and employees committing the negligent acts, which occurred in the scope and course of their agency, servitude, or employment.

As already discussed, the essence of this claim is that the nurse was negligent because she knew, or should have known, that given Mr. Vaughn's mental and physical state, including the fact that he was under medication and recovering from a recent major surgery, he "should not have been left alone to manage an extremely hot beverage." The question is whether the nurse's actions in bringing a cup of coffee to his hospital room and leaving it on his bedside table were "related to the provision of, or failure to provide, health care services." Tenn. Code Ann. § 29-26-101(a)(1). We believe the trial court correctly answered "yes" to this question. The THCLA broadly defines "health care services" to include "custodial or basic care, positioning, hydration and similar patient services." *Id.* § 29-26-101(b). In her brief, plaintiff argues that "[e]ven the statutory express consideration of hydration fails in this instance as coffee is a diuretic – providing the opposite of hydrating care." We find this argument creative, but spurious. We doubt that the Legislature, on the one hand, intended to *include* a *hydrating* beverage within its definition, but, on the other hand, intended to *exclude* a beverage that can be said to be *dehydrating*. Even if a cup of coffee does not qualify as a "vehicle" of hydration, it certainly falls within the general statutory definition of "similar patient services."

In several recent decisions, this Court has held that not *all* alleged injuries that occur within a health care provider setting necessarily fall within the definition of a health care liability action. *See Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366, at *4 (Tenn. Ct. App., filed Nov. 30, 2016) (vacating dismissal of complaint and holding allegation that chiropractor "beat Plaintiff . . . in the back with her medical folder" supports a reasonable inference that "the act took place after Dr. Mitchell finished providing health care services"); *Cordell*, 2017 WL 830434, at *5-*6 (plaintiff's claims stemming from alleged rape in a hospital by hospital employees do not constitute a health care liability action). As River Park points out, however, in *Cordell* we stated,

6

had the original complaint brought a negligence claim against [the hospital] directly and asserted that it was liable *due to its failure to provide appropriate care, supervision, or monitoring*, the complaint would have alleged that a "health care provider . . . caused an injury related to the . . . failure to provide . . . health care services."

*Id.* at *7 (emphasis added; ellipses in original). In the present case, plaintiff has alleged such a claim – that River Park's employee failed to provide appropriate supervision and monitoring of Mr. Vaughn and his cup of dangerously hot coffee.

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the Appellant, Nancy Youngblood, Executor of the Estate of Daniel Vaughn. The case is remanded for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE