# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 13, 2016 Session

## ROBERT DIONNE O'NEAL v. MARK GOINS, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15373III     Ellen H. Lyle, Chancellor**

_____

### No. M2015-01337-COA-R3-CV – Filed July 29, 2016
_____

Plaintiff, whose rights of citizenship had been restored, brought action against the state coordinator of elections and election commission for declaratory, injunctive, and other relief, asserting that the Defendants had improperly refused to restore his right to vote. On motion of Defendants, the trial court dismissed the complaint with prejudice for lack of subject matter jurisdiction and failure to state a claim for relief; the court also denied plaintiff's application to amend his complaint to assert a claim for mandamus. Finding no error, we affirm the dismissal of the complaint and denial of the application to amend; we modify the judgment to make the dismissal without prejudice.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Elizabeth R. McClellan, Murfreesboro, Tennessee, for the appellant, Robert Dionne O'Neal.

Herbert H. Slatery, III, Attorney General and Reporter; Joseph F. Whalen, III, Associate Solicitor General; Janet Kleinfelter, Deputy Attorney General, and Ryan A. Lee, Assistant Attorney General, Nashville, Tennessee, for the appellee, Mark Goins, individually and in his official capacity, and the Tennessee State Election Commission.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This appeal arises out of the efforts of Robert O'Neal, a convicted felon, to have his voting rights restored. Mr. O'Neal had his citizenship rights restored in accordance with Tenn. Code Ann. §40-29-101, *et seq.*, by order of the Circuit Court of Marshall County. His effort to have his right to vote restored pursuant to Tenn. Code Ann. §40-29-201, *et seq.* was not successful; as a result, he filed a petition in the Chancery Court for Davidson County against Mark Goins, Coordinator of Elections for the State of Tennessee, and the Tennessee State Election Commission, seeking, *inter alia*, the following relief:

> [1]. That this court determine whether Tenn. Code Ann. §§ 40-29-101 and 40-29-201 create a statutory ambiguity regarding the ability of the circuit courts to restore full rights of citizenship and resolve any such ambiguity according to the principles of statutory construction and governing law; and
> [2]. That this court determine that Tenn. Code Ann. §§ 40-29-201 *et seq.*, irrespective of any statutory ambiguity, do not give the Defendants the right to refuse to enforce final judicial orders requiring them to restore individuals to the voting rolls or to conduct a secondary investigation prior to enforcing such orders, pursuant to the separation of powers doctrine; and
> [3]. That this court hold the Defendants in civil contempt for their violation of the judicial order in *In re O'Neal* specifically requiring them to restore Plaintiff O'Neal to the voting rolls, as well as civil contempt for all other final orders which they have disregarded as alleged herein; and
> [4]. That this court impose appropriate sanctions for the civil contempt of Defendants, including an award of monetary sanctions and/or imprisonment of Defendant Goins until such time as Plaintiff and all similarly situated persons are restored to the voting rolls.

Goins and the Commission filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(1) for lack of subject matter jurisdiction on the grounds that O'Neal's claims were barred by sovereign immunity and qualified immunity, and pursuant to Rule 12.02(6) for failure to state a claim for relief on the grounds that the complaint failed to satisfy the requirements to proceed as a class action and failed to state a cause of action for civil contempt.

---

[1] The factual history is taken largely from the allegations of the complaint, which we take as true for purposes of this appeal, and from the statements by counsel at the hearing on the motion to dismiss the case and in the parties' briefs on appeal.

The trial court granted the motion to dismiss. The court held that the claims asserted against the Defendants in their official capacities were barred by sovereign immunity because O'Neal did not allege that they were enforcing an unconstitutional statute; that the claims against Goins in his individual capacity were barred by qualified immunity because O'Neal failed to allege the violation of a clearly established right and Goins was not responsible for the ultimate determination of eligibility; that the allegations of the complaint failed to satisfy the numerosity, commonality, and typicality requirements of Tenn. R. Civ. P. 23.01; and that, because the Circuit Court of Marshall County did not have personal jurisdiction over Goins or the Commission, there was no "lawful order" upon which to base O'Neal's claim of civil contempt.[2] With respect to arguments made by Mr. O'Neal at the hearing on the motion to dismiss, the court stated:

> During the hearing on Defendant's Motion to Dismiss, Plaintiff's counsel suggested numerous other potential causes of action. However, under the pleading standards set forth by the Tennessee Supreme Court in *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W. 3d 422 (Tenn. 2011), the Court is unable to craft a potential cause of action because the Court had insufficient factual allegations as to Plaintiff's claims.

Mr. O'Neal appeals, contending that the court erred in considering matters outside of the complaint; in not disposing of the motion as one for summary judgment; in not presuming the factual allegations of the complaint to be true; in failing to give the Plaintiff the benefit of all reasonable inferences; in not allowing an amendment to the complaint; and in dismissing the contempt action.

## II. STANDARD OF REVIEW

Mr. O'Neal's argument on appeal focuses on the trial court's dismissal of the case pursuant to Tenn. R. Civ. P. 12.02(6). The law and procedure to be applied by a court considering such a motion was succinctly stated in *Webb v. Nashville Area Habitat for Humanity, Inc.*:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"

---

[2] The Court rejected Mr. O'Neal's argument that all state agencies are a part of the "state" for the purposes of personal jurisdiction.

3

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.". . .

Under Tennessee Rule of Civil Procedure 8, Tennessee follows a liberal notice pleading standard . . . which recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court. Our state's notice pleading regime is firmly established and longstanding; this Court recognized well before the Tennessee Rules of Civil Procedure were adopted that "[t]he object and purpose of an pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried."

To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state "'the facts upon which a claim for relief is founded.'" A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." Thus, as we observed in *Leach*,

> "While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, *it must contain direct allegations on every material point* necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, *or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial*."

Moreover, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts.

346 S.W.3d at 426-27 (internal citations omitted). We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*. *Id.*

4

# III. ANALYSIS

## A. CONSIDERATION OF EXTERNAL MATTERS

Mr. O'Neal first contends that the trial court erred in considering matters external to the pleadings but not converting the motion into a motion for summary judgment in accordance with Tenn. R. Civ. P. 12.02.[3] In his brief, Mr. O'Neal asserts that, after asking counsel for the Defendants about the factual basis of the complaint, the trial court allowed counsel to "hold forth for eleven minutes 'explaining' the factual setting of the Plaintiff's Complaint in ways that both contradicted the Plaintiff's argument and introduced facts external to the pleadings, such as the roles of the local election commissions in accepting applications and the role of the state election coordinator and commission." Defendants respond that these "external matters" were legal argument and analysis of the statutory framework and do not constitute the introduction of facts beyond the scope of the complaint.

We have reviewed the hearing transcript, specifically the statements with which Mr. O'Neal takes issue. Taken in the context of the court's inquiry and the specific allegations of the complaint, it is clear that the statements of Defendants' counsel only address the restoration of rights and the voting registration processes and requirements contained in the various statutes at issue, including those in chapter 29 of Title 40 and chapter 2 of Title 2. The comments complained of by Mr. O'Neal are responses to questions from the court and arguments as to the law and procedure governing the consideration of the motion; clearly they are not intended to be, and do not function as, factual evidence as suggested by O'Neal. This contention has no merit and the trial court did not err in not treating the motion to dismiss as one for summary judgment.

## B. ALLEGATIONS OF THE COMPLAINT

Mr. O'Neal next contends that the trial court failed to take the factual allegations of the complaint as true and give him the benefit of all reasonable inferences; he argues that he clearly asserted in the complaint that the Defendants refused to obey the order restoring his

---

[3] The pertinent portion of Tenn. R. Civ. P. 12.02 reads:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted. . . . If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

voting rights. The Defendants maintain, however, that the complaint contained no proper factual allegations or reasonable inferences which the Court could have resolved in O'Neal's favor.

As noted previously, in considering a motion to dismiss, courts are to construe the complaint liberally, presuming all factual allegations to be true and giving the Plaintiff the benefit of all reasonable inferences. *Webb*, 346 S.W.3d at 425. However, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts. *Id.* at 427.

Our review of the complaint reveals very few factual allegations aside from the basic descriptions of the parties. The complaint itself is premised on Mr. O'Neal's legal contention and argument that chapter 29 of title 40 "provides two procedures related to restoration of citizenship rights including . . . the right to vote prescribed by Tenn. Code Ann. § 40-29-101 *et seq.*, or an administrative procedure for restoration of voting rights only subject to approval of an administrative application by the state election commission, as prescribed by Tenn. Code Ann. § 40-29-201 *et seq*" and that that orders restoring rights of citizenship are being disregarded.

In his brief on appeal Mr. O'Neal does not make citations to specific paragraphs of the complaint in support of this contention. At the argument on the motion to dismiss, his counsel identified paragraphs 22 through 25 of the complaint as setting forth actions that the Defendants took which Mr. O'Neal contended violated his rights. We have reviewed those paragraphs, as well as others which, read broadly, could be construed to allege facts rather than "merely legal arguments or 'legal conclusions' couched as facts." *Webb*, 346 S.W.3d at 427. Most of the complaint is devoted to conclusory statements either explaining the legal—but not factual—basis and theory of the complaint; plaintiff's interpretation of Tenn. Code Ann. §§ 40-29-101 *et seq.* and 40-29-201 *et seq.*; and the perceived roles of the state coordinator or elections, the state election commission, the county administrators of elections and county elections commission, in the restoration of the right to vote.

To the extent there are factual allegations in the complaint, there is nothing in the trial court's discussion or disposition of the case to lead us to conclude that the court did not accept the factual allegations in the complaint as true and afford Mr. O'Neal reasonable inferences arising therefrom.

### C. DISMISSAL OF THE COMPLAINT

Our consideration of Mr. O'Neal's argument that the court erred in dismissing the complaint requires us to construe conflicting provisions in title 40 of the Tennessee Code, governing criminal procedure, particularly as those provisions intersect with those in title 2, governing voter registration. In so doing, we apply the well-settled principles of statutory

construction, the most basic of which is to ascertain and give effect to the intention of the legislature. *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799,802 (Tenn. 2000) (quoting *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993)). We presume that the legislature knows of its prior enactments and the state of the law at the time it passes the legislation at issue. *Wilson v. Johnson County*, 879 S.W.2d 807, 810 (Tenn. 1994). Therefore, in resolving potential conflicts between statutes, courts must seek a reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws. *LensCrafters Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). As such, statutes "*in pari materia*"—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute. *Belle—Aire Village, Inc. v. Ghorley*, 574 S.W.2d 723, 725 (Tenn. 1978). Finally, and most relevant to the case at hand, "[s]pecific provisions relating to a particular subject must govern in respect to that subject, as against general provisions in other parts of the law which might be broad enough to include it." *Cont'l Tenn. Lines, Inc. v. McCanless*, 354 S.W.2d 57, 58-59 (Tenn. 1962).

Chapter 29 of Title 40 governs the restoration of citizenship for those whose rights of citizenship have been revoked as a result of a criminal prosecution. Part 1 of chapter 29 is entitled "General Provisions"; Tenn. Code Ann. § 40-29-101(a) provides, "Persons rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have their *full rights of citizenship* restored by the circuit court" (emphasis added). Tenn. Code Ann. § 105(b)(6), which applies to all persons convicted of infamous crimes between July 1, 1986, and July 1, 1996,[4] provides:

> A certificate of restoration issued pursuant to subdivision (b)(3) shall be sufficient proof to the administrator of elections that the person fulfills the requirements provided in subdivision (b)(1); however, *before allowing a person convicted of an infamous crime to become a registered voter, it is the duty of the administrator of elections in each county to verify with the coordinator of elections that the person is eligible to register under this section.*

(emphasis added).

Part 2 of the chapter, entitled "Voting Rights," begins with Tenn. Code Ann. § 40-29-201 which states in pertinent part:

---

[4] At the hearing on the motion, counsel for Defendants advised that Mr. O'Neal was convicted of the offense which resulted in the revocation of his rights in 1993.

(a) The provisions and procedures of this part shall apply to and govern restoration of the *right of suffrage* in this state to any person who has been disqualified from exercising that right by reason of a conviction in any state or federal court of an infamous crime.

    * * *

(c) *This part shall apply only to restoration of the right of suffrage. For restoration of all other rights of citizenship forfeited as the result of a conviction for an infamous crime, part 1 of this chapter shall apply.*

(emphasis added).

The pertinent portion of Tenn. Code Ann. § 40-29-202 states:

(a) A person rendered infamous and deprived of the right of suffrage by the judgment of any state or federal court is eligible to apply for a voter registration card and have the right of suffrage restored upon:
(1) Receiving a pardon, except where the pardon contains special conditions pertaining to the right of suffrage;
(2) The discharge from custody by reason of service or expiration of the maximum sentence imposed by the court for the infamous crime; or
(3) Being granted a certificate of final discharge from supervision by the board of parole pursuant to § 40-28-105, or any equivalent discharge by another state, the federal government, or county correction authority.
* * *
(c) *Notwithstanding subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person is current in all child support obligations.*

(emphasis added).[5]

    Tenn. Code Ann. §§ 40-29-101 *et seq.* and 40-29-201 *et seq.* relate to the same subject, i.e., restoration of rights which have been revoked as a result of a criminal conviction. Tenn. Code Ann. § 40-29-101 allows for the restoration of "full rights of citizenship," while § 40-29-201(c) states that part 2 is applicable to the right to vote and that all other rights for which restoration is sought proceed under part 1. To the extent there is a conflict between the statutes, applying the principle set out in *Cont'l Tenn. Lines, Inc. v. McCanless*, the reasonable construction is that the specific procedure at Tenn. Code Ann. § 40-29-201 *et seq.* is to be utilized when seeking restoration of the right to vote rather than the

---

[5] In the course of the hearing on the motion to dismiss, Mr. O'Neal's counsel stated that she had been told that the state election coordinator's office "ha[d] conducted an investigation and Mr. O'Neal owes child support." This was not alleged in the complaint.

8

general "full rights of citizenship" provisions of § 40-29-201 *et seq.* for those whose right to vote has been revoked as a result of a criminal conviction.

Tenn. Code Ann. § 40-29-202(a) allows that a person whose right to vote has been revoked "is eligible to apply for a voter registration card and have the right of suffrage restored" under certain circumstances; the person is not eligible to apply for a card and have the right to vote restored unless the person has paid any restitution ordered by the court and costs assessed, and the person is current in all child support obligations. Tenn. Code Ann. § 40-29-202(c) & (c). Tenn. Code Ann. § 2-2-139, governing restoration of voting privileges to those who have been convicted of crimes, states:

> (a) Any person who has forfeited the right of suffrage because of conviction of an infamous crime may register to vote and vote at any election for which the person is eligible by submitting sufficient proof to the administrator of elections in the county in which the person is seeking to register to vote, that:
> * * *
> (2) The person's full rights of citizenship have been restored as prescribed by law; or
> * * *
> (b) For purposes of this section, a pardon or a certified copy of a judgment of a court of competent jurisdiction shall be sufficient proof to the administrator that the person fulfills the above requirements as to the offense or offenses specified on the pardon or judgment; *however, before allowing a person convicted of an infamous crime to become a registered voter, it shall be the duty of the administrator in each county to verify with the state coordinator of elections that the person is eligible to register under the provisions of this section.*
> (c) The state election coordinator is empowered to formulate a uniform procedure for verifying the registration eligibility of any person convicted of an infamous crime. *Upon receiving sufficient verification of such person's eligibility to register, the administrator shall allow such person to become a registered voter in the same manner and in accordance with the same laws, rules, or regulations as any other citizen of this state.*
> * * *

(emphasis added). Thus, under the statutes, after having one's rights of citizenship restored, the person must be deemed eligible to apply for a voter registration card, with the determination of eligibility to be made by the state election coordinator and communicated to the administrator of elections at the county election commission.

9

There is no allegation that this procedure was not followed with respect to Mr. O'Neal's attempt to have his right to vote restored; rather, Mr. O'Neal alleged that his full citizenship rights were restored pursuant to Tenn. Code Ann. § 40-29-101 by the order from the Circuit Court. The complaint alleges no other salient facts relative to any effort he made to apply for a voter card, challenge the fact that he was not eligible to have his right to vote restored, or appeal in accordance with the procedure allowed by Tenn. Code Ann. § 2-2-125.[6] The trial court correctly held that the factual allegations of the complaint were not sufficient to state a claim for relief.

## D. WRIT OF MANDAMUS

Mr. O'Neal next argues that the trial court erred in not permitting an amendment of the complaint to a writ of mandamus and, instead, dismissing the case with prejudice. O'Neal contends that the Defendants had no authority under §40-29-201 to disobey the §40-29-101 order from the Circuit Court. The trial court concluded that an amendment to the complaint to bring this action as a writ of mandamus would be futile because "it is apparent from the face of the complaint that this case does not involve the enforcement of a ministerial duty."

Tenn. R. Civ. P. 15 governing the amendment of complaints is construed liberally but courts may deny an amendment if such an amendment would be futile. *Welch v. Thuan*, 882 S.W. 2d 792 (Tenn. Ct. App. 1994).[7] An amendment is futile if it would prolong litigation but not produce a different result. *See id.* at 794.

---

[6] Tenn. Code Ann 2-2-125 states:

> (a) If the administrator of elections determines that the registrant is not entitled to be registered, the administrator shall tell the registrant the reason, write the reason on the back of the original permanent registration record, and file the original and the duplicate alphabetically in a binder of rejected registrations.
> (b) The administrator shall tell the registrant that the registrant has a right to appeal the decision to the commission within ten (10) days and offer the registrant an appeal form.
> (c) The action of the commission on the registrant's application for registration on appeal shall be a final administrative action.
> (d) If the commission determines, after notice and hearing for the appellant, that the appellant was not entitled to register, the commission shall give the appellant a written statement of its reasons for so holding.
> (e) If the commission believes that the appellant has violated the law in registering, it shall report the matter to the grand jury and the district attorney general.

[7] The court in *Welch* noted: "The Tennessee Supreme Court has stated some relevant factors the trial court should consider in deciding whether to grant a motion to amend. These include "undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, *and futility of amendment*." *Welch*, 882 S.W. 2d at 793. (emphasis added).

A writ of mandamus is issued to enforce the performance of an official or ministerial duty and to compel the exercise of power. *Tusant v. City of Memphis*, 56 S.W.3D 10, 18 (Tenn. Ct. App. 2001). In determining whether an act is ministerial for which mandamus may lie, courts look to whether the law defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of judgment. *Id*. A writ of mandamus will not lie where a right is doubtful and can only be applied when a right has clearly been established. *Id*.

We agree with the trial court that mandamus is not a remedy available on the allegations of the complaint. In the absence of a determination that Mr. O'Neal is eligible to have his right to vote restored, there is no ministerial duty to be compelled by the writ. Moreover, under the voter registration provisions at chapter 2 of Title 2, the county election commission and the administrator of elections appointed by that commission are responsible for voter registration. The Defendants in this action have no ministerial duty to restore Mr. O'Neal's right to vote; their duty is to verify his eligibility to apply for a voter registration card.

## E. CIVIL CONTEMPT

The trial court held that the complaint failed to state a claim for civil contempt because the order as to which Mr. O'Neal sought to enforce by contempt was entered by a court which did not have subject matter or personal jurisdiction over the Defendants.

An act of contempt is a willful or intentional act that hinders, delays, or obstructs the court's administration of justice. *Ahern v. Ahern,* 15 S.W.3d 73, 78 (Tenn. 2000); *Winfree v. State,* 135 S.W.2d 454, 455 (1940). As noted by the trial court, a claim for civil contempt based on disobedience to an order of the court must satisfy four elements: 1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the person's violation of the order must be "willful." *See Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008).

The order Mr. O'Neal seeks to enforce by contempt is an order entered in the proceeding in which his citizenship rights were restored; neither of the Defendants in this case were parties to that proceeding and there is no duty or order imposed upon which to base a finding of contempt. Moreover, the order sought to be enforced by the Davidson County Chancery Court was entered in Marshall County Circuit Court. We know of no authority for a court in one jurisdiction to hold a party in contempt of an order entered in another jurisdiction. The purpose of contempt is to vindicate the authority of the court that entered the order with respect to the parties bound by the order. This claim is totally without merit.

11

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Chancery Court in dismissing this action and denying the application to amend the petition. We modify the judgment to make the dismissal without prejudice.

_____
RICHARD H. DINKINS, JUDGE