IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2025 Session

## FRENCH BROAD UNITED METHODIST CHURCH ET AL. v. HOLSTON ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, ET AL.

Appeal from the Chancery Court for Knox County
No. 204703-III      Christopher D. Heagerty, Jr., Chancellor

———

### No. E2024-00950-COA-R3-CV

———

This appeal involves a dispute between a local church and a denominational organization regarding the ownership of church property. We have concluded that the trial court did not err in denying the local church's motion to recuse and, further, that the trial court properly dismissed all of the local church's claims for lack of subject matter jurisdiction or failure to state a claim upon which relief may be granted. Therefore, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Brett D. Stokes, Knoxville, Tennessee, for the appellants, Bethel United Methodist Church, Bethel Church at Kodak, James Emmert, Jo Ann Ingle, John W. Maples, and Lee Wertheim.

Heather G. Anderson, Knoxville, Tennessee, for the appellees, Holston Annual Conference of the United Methodist Church, Inc., Debra Wallace Padget, Ann P. Robbins, The Board of Trustees of HAC of UMC, and Stephen C. Walling.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the ownership of property located on Kodak Road in Knoxville ("the property"), which was historically used as a parsonage. This property dispute arises within the context of theological divisions within the United Methodist

Church and provisions in the church's governing document concerning the process for local churches to disaffiliate from the denomination.

In May 2022, French Broad United Methodist Church and its trustees (collectively, "French Broad UMC" or "the plaintiffs") filed a complaint for declaratory and injunctive relief against Bethel United Methodist Church; Bethel Church at Kodak, NPO; and several individuals (collectively, "Bethel UMC"). According to the complaint, a shared pastor of the French Broad United Methodist Church and the Bethel United Methodist Church resided on the property until approximately 2011. After the two churches hired separate pastors, neither of whom resided on the property, disagreement arose over ownership of the property. In its May 2022 complaint, French Broad UMC sought a declaration that a quitclaim deed purporting to convey the property to Bethel UMC was fraudulent and void; the plaintiffs also sought damages for conversion.

In February 2023, Bethel UMC filed a countercomplaint as well as a third-party complaint for damages against Holston Annual Conference of the United Methodist Church, its board of trustees, and several individuals (collectively, "Holston"). The third-party complaint between Bethel UMC and Holston is the subject of this appeal.[1] In the third-party complaint, Bethel UMC asserted an action to quiet title (count 1) and claims for a declaratory judgment (count 2), judicial modification of a trust (count 3), breach of fiduciary duty (count 4), fraud and abuse of process (count 5), and civil conspiracy (count 6). Bethel UMC took the position that a trust provision in the Book of Discipline of the United Methodist Church, which provided that all local church properties were held in trust for the benefit of the denomination, did not create a valid trust.[2]

In March 2023, Holston filed a motion to dismiss the third-party complaint on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. In support of its motion, Holston submitted an affidavit of Jason Gattis, a district superintendent of the Holston Annual Conference, with excerpts from *The Book of Discipline of the United Methodist Church* ("*The Book of Discipline*") and decisions from the judicial council of the United Methodist Church.

On March 28, 2024, Bethel UMC filed a Tennessee Supreme Court Rule 10B motion seeking the recusal of the trial judge on grounds of bias, impropriety, and the appearance of impropriety. (The basis of these allegations will be discussed more fully below.) On April 19, 2024, the trial court entered a memorandum and order denying Bethel UMC's Rule 10B motion for recusal.

---

[1] The remainder of this opinion will not discuss claims outside the third-party complaint or procedural history not related to the issues on appeal.

[2] In its pleadings, Bethel UMC referred to the United Methodist Church as "the Myth[o]logical Creature" and characterized the denomination as a pyramid scheme.

On May 28, 2024, the trial court also entered a memorandum and order granting Holston's motion to dismiss the third-party complaint and dismissed the third-party complaint in its entirety. (We will discuss the trial court's reasoning in the analysis section of this opinion.)

On July 29, 2024, the trial court granted Bethel UMC's motion to stay all remaining trial court proceedings pending resolution of the appeal; the court also entered an amended order making its May 28, 2024 order a final judgment as to any and all claims against Holston pursuant to Tenn. R. Civ. P. 54.02.

Bethel UMC presents several issues on appeal, which we have consolidated as follows: (1) whether the trial court erred in denying Bethel UMC's recusal motion, and (2) whether the trial court erred in dismissing Bethel UMC's claims against Holston. In addition, Holston seeks an award of its attorney fees and costs on appeal.

ANALYSIS

I.      Recusal motion

Bethel UMC argues that the trial court erred in denying Bethel UMC's motion to recuse the trial judge. The issue of whether a judge "should have recused himself because his impartiality might reasonably be questioned" is a question of law subject to de novo review. *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing TENN. SUP. CT. R. 10B, § 2.01).

Under Tennessee law, "litigants are entitled to have cases resolved by fair and impartial judges." *Cook*, 606 S.W.3d at 253. Moreover, "[t]o preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception." *Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023). The Tennessee Rules of Judicial Conduct ("RJC") provide that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." TENN. SUP. CT. R. 10, RJC 1.2. These rules further declare that judges "shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2. To act impartially, a judge must act without "bias or prejudice in favor of, or against, particular parties or classes of parties" and must maintain "an open mind in considering issues that may come before a judge." *Id.*

Rule 2.11(A) of the Rules of Judicial Conduct states: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." This rule "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. The objective test requires a judge to recuse himself or herself if "'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning

the judge's impartiality.'" *Id.* (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)).

### A. Motion to recuse and response

In its motion to recuse, Bethel UMC alleged that the trial court had allowed "numerous delays to [Bethel UMC's] detriment," which Bethel UMC attributed to "the trial court judge's inability to be unbiased toward [Bethel UMC] and the appearance of impropriety that are created by certain personal relationships and facts" witnessed by Bethel UMC. The motion further stated:

> 4. It is public knowledge that the trial judge is friends and or has a long-standing relationship with former Mayor, Congressman, and now House Representative, Tim Burchett, for Knox County and the same is noted on his application to the Judiciary; whereby, Mr. Burchett was the first reference listed. (Exhibit B). Also, the presiding judge is also a reference on the trial judge's application and the other Chancellor is also part of the Republican party; wherefore, the Defendants [Bethel UMC] would request that a new judge be appointed by interchange.
>
> 5. It is further noted that the former Mayor, Congressman and now House Representative, Tim Burchett, also has a long-standing relationship with several of the Plaintiffs in this case. Specifically, [Cheryl] Cruze, and her daughter, Colleen Bhatti, who own and run Cruze Farm and Sam Maynard, who was a National Republican delegate and State Executive Committeeman, where the trial judge is the election commissioner and who all are also purported "trustees" of the Plaintiff "church." It is even further evidenced that the Cruze family even held a Congressional fundraiser for Representative Burchett when he was running for Congress and finally, the last remaining Plaintiff Trustee, Patricia Bowman Reynolds, is also a now retired former Knox County Court employee and none of these relationships were ever disclosed to the Defendants. (Collective Exhibit C).

Based upon these relationships and "the unexplained reasons for the Court not addressing Motions and proceeding with the case in a timely manner," Bethel UMC asserted that "bias, impropriety and the appearance of impropriety" were interfering with their constitutional right to a fair trial and an impartial tribunal.

In support of the recusal motion, Bethel UMC submitted an affidavit of Gerald Dingman, the pastor of "Bethel Church." Mr. Dingman testified that he had been present "on numerous occasions for court hearings" in this case and had attended three court appearances where "numerous motions were supposed to be heard by the Court and for some unknown reasons or explanations nothing takes place." Further, Mr. Dingman stated

- 4 -

that, during the almost three years of litigation, he felt that "something was off by the proceedings and the Court's demeanor toward our case," that the judge seemed "a lot more friendly to the other attorneys and especially the Plaintiffs [French Broad UMC]," and that "the case does not seem to be moving forward in a normal fashion." Mr. Dingman then described an incident he observed before one of the court proceedings:

> 14. Said occurrence that sparked my curiosity was that I saw House of Representative, Tim Burchett, come into the courthouse and go to the Clerk & Master's Desk and demand that he be able to speak to Chancellor Haggerty.
> 15. Mr. Burchett was holding a stack of papers that he had in his hand and informed the Clerk that he needed to see the judge now.
> 16. Representative Burchett was then let into the back area that leads to the Judges Chambers and within ten minutes he exited and no longer had those papers in his hands.
> 17. Wherefore, when I went home that evening, I started looking for any connections among the Plaintiffs and Representative Burchett and Judge Haggerty.
> 18. The public information that I found after a short search that clearly shows the close proximity and relationship between the parties is what is attached to the Defendants' 10B motion.

Mr. Dingman expressed his opinion that "there is some undue influence or some underlying reason that the trial judge is effectuating a bias toward our case" and that this alleged bias was based on the judge's relationships with Congressman Burchett and the plaintiffs. The materials attached to Mr. Dingman's affidavit are copies of the trial judge's application for nomination to judicial office and an undated flyer entitled "Burchett for Congress" with a location at Cruze Farm.

French Broad UMC filed a response in opposition to Bethel UMC's motion to recuse, along with an affidavit of Cheryl Cruze, a member and trustee of the French Broad United Methodist Church.[3] Ms. Cruze described her observations of Congressman Burchett's brief appearance in the courtroom prior to a motion hearing on March 26, 2024. According to Ms. Cruze, Congressman Burchett "came into the crowded courtroom and approached the bench where Chancellor Heagerty was sitting." After speaking briefly to the chancellor, Congressman Burchett left the courtroom through the public exit. Ms. Cruz further stated that Congressman Burchett came to her farm in the summer of 2018 for "an ice cream event honoring his successful support" for the construction of a new elementary

---

[3] Although French Broad UMC and the other plaintiffs are not parties to this appeal, our decision on the trial court's denial of the motion to recuse could affect their claims in their original lawsuit against Bethel UMC, which remains pending in the trial court. Therefore, this Court afforded French Broad UMC and the other plaintiffs the opportunity to file a brief regarding the trial court's denial of Bethel UMC's motion to recuse, and they did so.

school. Ms. Cruz averred that she had not seen or communicated with Congressman Burchett since that day and that she had never contributed funds to Congressman Burchett or been involved in any fundraiser for him. Mr. Cruz denied having any relationship or acquaintance with the trial judge.

### B. Trial court's ruling on motion to recuse

In its memorandum opinion and order, the trial court provided a detailed analysis of its reasons for denying the recusal motion. We will provide a summary of the trial court's opinion.

The court set out the entire procedural history of the case and the actions the court had taken. In this history, the court referenced a notice of hearing filed by Bethel UMC on March 5, 2024, for a hearing set for March 26, 2024. The court noted that, based upon later submissions, "there was no agreement between the parties with regard to which of the numerous pending motions of the parties would be actually heard on March 26, 2024." Holston filed a motion for a status conference, which was also set for hearing on March 26, 2024. The trial court observed that Holston's motion for status conference addressed "the delays that have been associated with this civil action" and that the motion included a statement that counsel for French Broad UMC had sent several requests to all attorneys in the case to meet with the court on several occasions to discuss the case status but had received no response from Bethel UMC's counsel.

In its opinion denying the recusal motion, the trial court further addressed Bethel UMC's allegations regarding the court's alleged relationships with the parties and the encounter with Congressman Burchett:

> 106. The undersigned does not know any of the parties to this action.
> 107. No member of [the] family of the undersigned is within the "third degree of relationship" with any person or party associated with this civil action. *See RJC*, Rule 2.11(A).
> 108. On March 26, 2024, Congressman Burchett came to the courthouse to discuss a personal matter with the undersigned that was wholly unrelated to this civil action.
> 109. The papers the Congressman carried with him (and which were referred to in the *Affidavit of Mr. Dingman*) were the Congressman's personal homeowner's insurance policy and the declarations page associated with the policy.
> 110. The undersigned has never discussed this case with the Congressman, nor has the undersigned discussed the Congressman's relationship to any party to this action with him.
> 111. The undersigned has no knowledge of the political party affiliation of any party to this civil action.

112.  Given the degree of confusion and/or lack of agreement between the parties with regard to which of the pending motions would be heard at the March 26, 2024 hearing, the undersigned seized upon the opportunity to conduct a status/scheduling conference in this matter on that date, and the matter is now scheduled for the hearing of motion which may or may not be dispositive of the issues joined.

113. The undersigned is a practicing Roman Catholic.

(Citation to the record omitted).

After setting out the relevant provisions of the Rules of Judicial Conduct and the objective standard applicable to the court's consideration of such motions, the court concluded that the motion to recuse was not supported by the alleged facts or any inference that could be drawn from those facts. The trial court specifically addressed the timeliness of Bethel UMC's assertion that it was "public knowledge that the trial judge is friends and or has a long-standing relationship with . . . Tim Burchett." Even assuming that this assertion were true, the trial court pointed out, the "failure of the Movant [Bethel UMC] to take immediate issue with this relationship may have resulted in the waiver of this ground for recusal/disqualification." The trial court reiterated its previous factual statements (quoted above), denying many of Bethel UMC's factual assertions. Furthermore, the trial court found that the "relationships" alleged by Bethel UMC as grounds for disqualification were "extremely attenuated" and did not fall within the relationships prohibited by the Rules of Judicial Conduct. The trial court reiterated that it was unaware of the political affiliation of the parties or their attorneys and concluded that, under the objective standard, there was no "reasonable basis for questioning the undersigned's impartiality based on political affiliation."

Finally, the trial court addressed the pace of the litigation and explained that, because the parties could not agree on scheduling and the scope of matters to be addressed at a particular hearing, the court had fulfilled its responsibility to "intercede and take charge of the scope and pace of litigation."

The trial court concluded that "a person of ordinary prudence in the undersigned's position, knowing all of the facts known to the undersigned, could not find a reasonable basis for questioning the undersigned's impartiality in this civil action."

C.  Bethel UMC's argument on appeal

In challenging the trial court's denial of its motion to recuse, Bethel UMC makes a cursory argument that fails to address any of the specific findings or conclusions enumerated by the trial court in its opinion.

The following paragraph from Bethel UMC's brief contains the entirety of its argument on the alleged error committed by the trial court on this issue:

> A judge's adverse ruling against a party is not sufficient to require recusal; however, when you review the Appellants['] Motion for Recusal, the Affidavit of the Appellants and the exhibits attached thereto and realize that the Order denying the relief was the fastest action that the judge partook in the entire case and coupled with the glaring affinity among the trial judge and a sitting United States Congressman and then you see the affinity among the head Trustee/Co-Conspirator, Cheryl Cruze, and her family and family business to the same United States Congressman. Then the fact that said Congressman travels from Washington, D.C. to Knoxville, TN and arrives prior to a hearing between all the parties and visits with the trial judge before said hearing; how can the litigants or the public be guaranteed the right to a fair and impartial tribunal or at the very least have confidence that there is not the appearance of impropriety.

(Citation to record omitted).[4]

Pursuant to Tenn. R. App. P. 27(a)(7)(A), an appellant's brief must contain an argument that sets forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief." Bethel UMC simply recites some of the allegations contained in its motion to recuse and does not address the trial court's lengthy discussion and refutation of the factual assumptions made by Bethel UMC. Based upon Bethel UMC's brief, this Court is unable to discern Bethel UMC's argument as to how, specifically, the trial court's analysis and denial of the motion were deficient. Any attempt by this Court to further address the merits of Bethel UMC's appeal on this issue "would impermissibly shift the burden of creating [the litigant's] legal argument onto this Court." *Cannistra v. Brown*, No. M2023-01819-COA-R3-CV, 2025 WL 2480054, at *5 (Tenn. Ct. App. Aug. 28, 2025) (quoting *Wallace v. First Cash Inc.*, No. E2024-01096-COA-R3-CV, 2025 WL 842174 at *3 n.2 (Tenn. Ct. App. Mar. 18, 2025)).

The trial court applied the correct, objective legal standard, refuted many of Bethel UMC's factual assumptions, and concluded that no reasonable person, knowing all of the facts, would have a reasonable basis for questioning the judge's impartiality. We agree with the trial court's conclusion and affirm the trial court's denial of the motion to recuse.

---

[4] This paragraph of Bethel UMC's brief is followed by a six-page list of the documents contained in the technical record. The brief does not explain the relevance of this list to Bethel UMC's argument.

II.     Motion to dismiss

The next issue is whether the trial court erred in granting Holston's motion to dismiss Bethel UMC's third-party complaint.

Holston moved for dismissal pursuant to Tenn. R. Civ. P. 12.02(1), lack of subject matter jurisdiction, and 12.02(6), failure to state a claim upon which relief may be granted, based upon the ecclesiastical abstention doctrine. Our Supreme Court has made clear that, in considering a factual challenge to subject matter jurisdiction, a trial court "may consider matters outside the pleadings, such as affidavits or other documents." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 160 (Tenn. 2017) ("*COGIC*"). The issue of whether subject matter jurisdiction exists presents a question of law, so our review is de novo, without a presumption of correctness. *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712-13 (Tenn. 2012). A motion to dismiss under Tenn. R. Civ. P. 12.02(6) challenges the legal sufficiency of the complaint and is also reviewed under the de novo standard. *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

A. Factual findings of the trial court in ruling on the motion to dismiss

In ruling upon Holston's factual challenge to the court's subject matter jurisdiction, the trial court properly considered the documents and affidavits submitted by the parties and made the following findings:

12.   In 2019, the General Conference of the United Methodist Church adopted ¶ 2553 of *The Book of Discipline*, entitled "Disaffiliation of a Local Church Over Issue Related to Human Sexuality," which created the process under Church law for local churches to disaffiliate from the Church.
13. The question regarding the proper process of local church disaffiliation was submitted to the Judicial Council of the Church (the "Judicial Council"), the Church's highest internal judicial body.
14. Upon this submission, the Judicial Council determined that ¶ 2548.2 of the *Discipline* could not be used as a pathway for local churches to disaffiliate from the Church and is not consistent with the Church's connectional polity embodied in the *Discipline*.
15. According to the Judicial Council of the United Methodist Church, "The *Discipline* is the law of the church that regulates every phase of the life and work of the church. Decision 96 made clear the principle that the *Discipline* is the only authoritative book of law of the church. All entities of the church are bound by its provisions."
16. The Holston Annual Conference is a Tennessee non-profit corporation.
17. Third-Party Defendants Ann P. Robbins, Debra Wallace Padgett, and Jason Gattis are employed by the Holston Annual Conference.

18. Third-Party Defendant Stephen C. Walling is a member of the Holston Annual Conference.

19. Bethel admits that it was an affiliate of The United Methodist Church.

20. Bethel United Methodist Church has not completed any of the steps set forth in ¶ 2553 of the *Discipline* for disaffiliation from the Church.

(Citations to the record and footnotes omitted).

The trial court went on to quote extensively from *The Book of Discipline*. The following provisions from *The Book of Discipline* include those we consider most relevant to this appeal:

Section I. All Titles – In Trust

¶ 2501.  Requirement of the Trust Clause for All Property- 1.  All properties of United Methodist local churches and other United Methodist agencies and institutions are held, in trust, for the benefit of the entire denomination, and ownership and usage of church property is subject to the Discipline.
. . .
The United Methodist Church is organized as a connectional structure, and titled to all real and personal, tangible and intangible property held at jurisdictional, annual or district conference levels, or by a local church or charge, or any [ ] agency or institution of the Church, shall be held in trust for the United Methodist Church and subject to the provisions of its discipline.

Under ¶ 2503 of *The Book of Discipline*, all instruments of conveyance concerning church real property were to contain prescribed trust language. However, the absence of the stipulated trust language did not absolve the local church of its "responsibility to hold all of its property in trust for The United Methodist Church."

### B.   Dismissal of counts 1 through 3 for lack of subject matter jurisdiction

The trial court determined that Bethel UMC's claims to quiet title, for a declaration that the trust clause in *The Book of Discipline* was invalid, and for judicial modification of the trust (counts 1, 2, and 3) were barred by the ecclesiastical abstention doctrine.  Even if the doctrine did not bar these claims, the trial court found that *The Book of Discipline* would require the dismissal of these claims pursuant to the hybrid neutral principles approach, "under which trust provisions in governing church documents must be enforced."  The trial court noted that the dispute at issue "post-dated the codification of the 'trust' provisions of *The Book of Discipline*."

Bethel UMC argues that the trial court committed error in dismissing these claims for lack of subject matter jurisdiction pursuant to the ecclesiastical abstention doctrine because the court failed to properly weigh the evidence "produced in the entire record" that supported Bethel UMC's claims. For the reasons outlined below, we must reject this argument.

We begin with a discussion of the relevant caselaw on the ecclesiastical abstention doctrine. In the *COGIC* case, our Supreme Court considered the ecclesiastical abstention doctrine in the context of a church property dispute. *COGIC*, 531 S.W.3d at 146. This doctrine, which is derived from the First Amendment to the United States Constitution, "precludes civil courts in this country from adjudicating 'questions of discipline, or of faith, or ecclesiastical rule, custom, or law' or church polity, or the internal governance of religious organizations." *Id.* at 156 (quoting *Watson v. Jones*, 80 U.S. 679, 727 (1871)). After examining relevant caselaw, the *COGIC* court held:

> [T]he ecclesiastical abstention doctrine, where it applies, functions as a subject matter jurisdictional bar that precludes civil courts from adjudicating disputes that are "strictly and purely ecclesiastical" in character and which concern "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them."

*Id.* at 159 (quoting *Watson*, 80 U.S. at 733). The Court went on to explain that the doctrine does not apply in all legal disputes involving religious organizations. *Id.* For example, Tennessee courts can address tort claims "'as long as they can do so using neutral principles of law and can refrain from resolving religious disputes and from relying on religious doctrine.'" *Id.* (quoting *Redwing v. Cath. Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 452 (Tenn. 2012)).

With respect to church property disputes, the Court stated that the ecclesiastical abstention doctrine did not "require dismissal of every church property dispute." *Id.* The doctrine does, however "'severely circumscribe[] the role that civil courts may play in resolving church property disputes.'" *Id.* (quoting *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969)). Thus, "civil courts are prohibited 'from resolving church property disputes on the basis of religious doctrine and practice,' and when resolving such disputes, must 'defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization.'" *Id.* (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)).

The *COGIC* Court went on to examine the general approaches to addressing church property disputes, both those endorsed by the United States Supreme Court and those

adopted by state courts. *Id.* at 162-170. In the end, the Court adopted the hybrid version[5] of the neutral-principles of law approach for resolving church property disputes. *Id.* at 170. The neutral-principles approach provides that "courts decide church property disputes based on the same neutral principles of law applicable to other entities, while deferring to the decisions of religious entities on ecclesiastical and church polity questions." *Id.* at 167. The Court continued:

> In applying the hybrid approach, Tennessee courts may consider any relevant statutes, the language of the deeds and any other documents of conveyance, charters and articles of incorporation, and any provisions regarding property ownership that may be included in the local or hierarchical church constitutions or governing documents. But under the neutral-principles approach that *Jones* approved as constitutionally permissible, and which we adopt, a civil court must enforce a trust in favor of the hierarchical church, even if the trust language appears only in the constitution or governing documents of the hierarchical religious organization.

*Id.* at 170.

Next, the *COGIC* Court applied these principles to the facts before it, which involved a property dispute between a local church, Gospel Center Temple COGIC ("Temple COGIC"), and a national religious corporation, the Church of God In Christ, Inc. ("COGIC"). *Id.* at 150. The Court determined that a property dispute existed that required a court "to determine whether Temple COGIC property was held in trust for COGIC." *Id.* at 172. Although the deed to Temple COGIC's property did not include trust language, the governing documents of COGIC, the hierarchical church, included a provision that the property of local member churches was held in trust for COGIC and subject to its constitution and governing documents. *Id.* at 173. The Court concluded that the local church, Temple COGIC, "agreed to be bound by COGIC's constitution and governing documents when it joined COGIC." *Id.* Therefore, under the hybrid neutral-principles approach, the Court concluded that the local church's property was held in trust for COGIC. *Id.*

In its decision, our Supreme Court determined that "the ecclesiastical abstention doctrine does not apply in this lawsuit." *Id.* at 149. That doctrine would prohibit a court

---

[5] Under the strict neutral-principles approach, "courts only give effect to provisions in church constitutions and governing documents of hierarchical religious organizations if the provisions appear in civil legal documents or satisfy the civil law requirements and formalities for imposition of a trust." *COGIC*, 531 S.W.3d at 168. The hybrid approach generally means that "courts defer to and enforce trust language contained in the constitutions and governing documents of hierarchical religious organizations, even if this language of trust is not included in a civil legal document and does not satisfy the formalities that the civil law normally requires to create a trust." *Id.*

from resolving a church dispute "on the basis of religious doctrine and practice." *Id.* The foregoing principles regarding the ecclesiastical abstention doctrine and the resolution of church property disputes have been followed in more recent Tennessee cases. *See Holston Presbytery of the Presbyterian Church (U.S.A.), Inc. v. Bethany Presbyterian Church*, No. E2022-01337-COA-R3-CV, 2023 WL 4789082, at *10 (Tenn. Ct. App. July 27, 2023) (applying the hybrid neutral-principles approach to hold that, under the governing documents of the national church, the local church held its real property in trust); *Blue v. Church of God Sanctified, Inc.*, No. M2021-00244-COA-R3-CV, 2022 WL 2302263, at *1 (Tenn. Ct. App. June 27, 2022) (upholding the trial court's determination that "the ecclesiastical abstention doctrine precluded the court's hearing any claims except the property dispute" and declaring the church's national governing body to be the owner of the local church property).

Under the ecclesiastic abstention doctrine, a Tennessee court does not have jurisdiction to determine the procedure for the separation of an affiliated church from a hierarchical church organization. *Blue*, 2022 WL 2302263, at *12. The trial court dismissed Bethel UMC's actions to quiet title, to obtain a declaration that the relevant provisions of *The Book of Discipline* were invalid, and to obtain judicial modification of the trust because the resolution of these particular claims would require a court to involve itself in matters of ecclesiastical government. The principles set forth in *COGIC* and later Tennessee cases dictate that the property dispute between Bethel UMC and Holston is subject to determination in accordance with the hybrid neutral principles approach, which requires a court to defer to and enforce the trust provisions of *The Book of Discipline*.

Bethel UMC relies on the case of *Jones v. Wolf*, 443 U.S. 595 (1979), which involved a dispute over church property after a schism in a local church affiliated with a national denominational organization. The Supreme Court held that it was constitutionally permissible for the state of Georgia to "adopt neutral principles of law as a means of adjudicating a church property dispute." *Jones*, 443 U.S. at 604. In its argument, Bethel UMC cites the italicized sentences of the following passage from the Court's opinion:

> The neutral-principles approach cannot be said to "inhibit" the free exercise of religion, any more than do other neutral provisions of state law governing the manner in which churches own property, hire employees, or purchase goods. Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. *At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church.* Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil

- 13 -

courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.

*Id.* at 606 (emphasis added). Citing this language, Bethel UMC asserts that *The Book of Discipline* and the trust clause fail because Bethel UMC did not "ever intend to give centuries old properties, worth billions of dollars, away to strangers, when it violates their lives, liberties, freedom, and the pursuit of happiness to worship as they wish without harm to others or in violation of any laws."

We respectfully disagree with Bethel UMC's reasoning. The trial court found that, "Bethel admits that it was an affiliate of The United Methodist Church." The trial court also noted that the dispute at issue "post-dated the codification of the 'trust' provisions of *The Book of Discipline*." By its affiliation with the national church, Bethel UMC agreed to be bound by the governing documents of the United Methodist Church. *See COGIC*, 531 S.W.3d at 173. Further, based upon its reliance on *Jones*, Bethel UMC concludes that, instead of applying the ecclesiastical abstention doctrine, "as the long lineage of cases clearly indicates, . . . the legal neutral principles should have been applied to the trial court cause of action, which it was not." As previously discussed, however, Bethel UMC's claims were likewise subject to dismissal under that theory, which would require application of the trust provisions.[6]

Bethel UMC also argues that the trial court failed to properly consider "a plethora of evidence [submitted by Bethel UMC] to overcome the affidavits" submitted by Holston and that Bethel UMC's case was "substantially prejudiced by not being able to receive discovery" from Holston before the hearing on the motion to dismiss. With respect to the "plethora of evidence," Bethel UMC provides only a list of documents, each with a brief statement after its name. Most of the statements do not constitute discernible arguments. The list references "approximately 40 deeds" and asserts that these deeds establish, among other things, that "the Appellee is the only entity that has ever existed and been a party to real property transfers." Holston is the appellee in this matter, and this Court is unable to discern how Bethel UMC's assertions in any way negate the reasoning used by the trial court to resolve the motion to dismiss. Bethel UMC also lists a Riverdale utility easement, a Riverdale Church property deed, and a Huckleberry Property deed to support the proposition that a "purported 'merger'" between two churches never actually took place and that "the property was still titled to a church that closed and was not the Fake Broad

---

[6] Bethel UMC also argues that the trial court erred by dismissing its claims "without ruling on the good faith basis raised for the modification, change or extension of the law based upon the United States Supreme Court Case of *Jones v. Wolf*, 443 U.S. 595 (1979) to address counsel's concerns with *Church of God in Christ, Inc. v. L.M. Ministries, Inc.*, 531 S.W.3d 146 (Tenn. 2017)." In essence, Bethel UMC is asking this Court to abandon or modify the Tennessee Supreme Court's analysis in *COGIC*. This Court is bound by the precedent set by our Supreme Court and is without authority to overrule or modify a Supreme Court opinion. *Bloodworth v. Stuart*, 428 S.W.2d 786, 789 (Tenn. 1968).

[French Broad] church." Again, we cannot discern how these propositions would change the result reached by the trial court.

One of the documents listed by Bethel UMC includes information from the Tennessee Secretary of State purporting to show that "the United Methodist Church is a mythological creature and is not an organization created under the laws of the State of Tennessee." We understand Bethel UMC's argument here to be that the United Methodist Church is not a legal entity and cannot hold title to real property. Under Tennessee law, an unincorporated religious organization, such as a denomination, is considered a legal entity capable of owning real property. *See* Tenn. Code Ann. § 66-2-201; *Fain v. O'Connell*, 909 S.W.2d 790, 794 (Tenn. 1995). Moreover, bona fide religious institutions, which are defined to include "ecclesiastical or denominational organizations," are exempt from corporate registration requirements. Tenn. Code Ann. § 48-101-502(a)(1). Thus, Bethel UMC's position is without merit.

Bethel UMC also lists a "plethora of emails and affidavits of Jason Gattis, Superintendent for the Appellee's [sic]." Bethel UMC describes these documents as "[e]vidence of the detrimental reliance of the ownership of the property informed to the Appellants, the about face of the same and then the supported creation of the 'Fake Broad' church and their fake interest along with the Cruzes and Mr. Walling [individual counter-defendants], all of whom advanced the same under the guise of Religion and good deeds." This series of unsupported allegations does not provide an explanation as to how the trial court erred in concluding that, pursuant to the ecclesiastical abstention doctrine and the hybrid neutral principles approach, the church properties at issue are held in trust by The United Methodist Church pursuant to *The Book of Discipline*. Bethel UMC has not specifically refuted any portion of the trial court's findings, including its finding that Bethel UMC was affiliated with the United Methodist Church and, therefore, subject to the denomination's governing documents.

Finally, Bethel UMC argues that the trial court erred in making its decision without allowing Bethel UMC to obtain discovery responses. Bethel UMC asserts that "there was an Order to Compel down and a Motion for Sanctions was to be addressed the same day the trial court ultimately dismissed all their claims." A review of the procedural history is necessary to understand this argument. Bethel UMC propounded its discovery requests to Holston a few weeks before the hearing on Holston's motion to dismiss, so the responses were not due until after the hearing on June 5, 2023. The trial court took the motion to dismiss under advisement.

On June 22, 2023, Bethel UMC filed a motion to compel Holston's discovery responses. Holston filed a response to Bethel UMC's motion to compel on June 27, 2023, asserting that it had served responses, including objections, to Bethel UMC's discovery requests on June 20, 2023, and June 27, 2023. Further, Holston stated that it anticipated providing documents responsive to one outstanding document request on June 29, 2023.

- 15 -

On January 24, 2024, French Broad UMC filed a motion for a status conference "in order to establish a scheduling order to hear pending motions as between Plaintiffs/Counter-Defendants [French Broad UMC] and Defendants/Counter-Plaintiffs [Bethel UMC] and other deadlines in the above-captioned matter." French Broad then set out a list of motions filed by French Broad UMC and Bethel UMC in the pending actions against one another. The list did not include any filings in the third-party action between Bethel UMC and Holston. A scheduling conference occurred on March 26, 2024, and the court entered an order regarding the scheduling conference on March 27, 2024. In that order, the court granted the defendants' [Bethel UMC's] motion to compel and the plaintiffs' [French Broad UMC's] motion to compel. The court denied the oral motion to stay discovery made by French Broad UMC and Holston at the June 5, 2023 hearing. All outstanding motions were to be heard on May 23, 2024, "unless the Court renders an opinion prior to that date which renders the issues to be decided by such motions moot."

On April 15, 2024, Bethel UMC filed a motion for sanctions against Holston. In its motion, Bethel UMC quoted language from the court's March 27, 2024 order stating that "discovery is to be answered in full and in the event it is not answered in full by the parties within ten (10) days from the date of entry of this Order, the Court will consider sanctions because it has been outstanding for so long." Based upon this language, Bethel UMC argued that Holston was in violation of the court's order and requested sanctions for its alleged failure to respond to Bethel UMC's request for production of documents. Bethel UMC asked that its motion be addressed and disposed of on May 28, 2024, "with all other pending motions."

On April 23, 2024, Holston filed a motion for a protective order regarding Bethel UMC's motion to compel, asking the court to prohibit discovery as to certain requests for production made by Bethel UMC in discovery requests served in May 2023. Holston stated that it had produced documents in response to Bethel UMC's requests but explained that it had objected to and declined to produce documents in response to certain requests "for good cause." In its motion, Holston set out the four requests for production at issue and explained its position on why it was seeking a protective order regarding those requests. Holston also filed its response to Bethel UMC's motion for sanctions, in which it reviewed the sequence of events preceding the scheduling order issued by the court on March 27, 2024. As noted in Holston's response to the motion for sanctions, the notice of hearing filed by Bethel UMC on March 5, 2024 made no reference to Bethel UMC's motion to compel discovery as to Holston. According to Holston's motion, "At the hearing on March 26, 2024, there was no reference by counsel for [Bethel UMC] as to its Motion to Compel filed against [Holston]." Further, counsel for Holston "did not participate in the hearing on . . . March 26, 2024 because neither Motion to Compel involved the Third-Party Defendants." Holston, therefore, requested denial of the motion for sanctions.

The trial court entered its order granting Holston's motion to dismiss the third-party complaint on May 28, 2024. That same day, the court held a hearing on the pending

- 16 -

motions before the court. In its order regarding the pending motions, entered on May 29, 2024, the trial court referenced its order of March 27, 2024, "granting competing Motions to Compel filed by both Plaintiff [French Broad UMC] and Defendant [Bethel UMC]." The trial court granted French Broad UMC's request for a continuance of certain pending motions to give it time to review discovery received from Bethel UMC. In light of its dismissal of the third-party complaint, the court dismissed Bethel UMC's motion for sanctions relating to discovery as moot.

Bethel UMC now asks this Court to reverse the trial court's denial of Holston's motion to dismiss because it was prejudiced by not receiving discovery responses. Yet, Bethel UMC did not request a continuance of the hearing on the motion to dismiss to allow for its receipt of discovery requests. During the period in which the motion to dismiss was taken under advisement, Bethel UMC did not set its motion to compel for a hearing and did not file a motion for sanctions for almost a year. Bethel UMC has not established that the lack of discovery affected the outcome of this case. Moreover, even if discovery responses might have affected the outcome, Bethel UMC did not take reasonable steps to prevent the occurrence of this alleged error.

We find no error in the trial court's dismissal of counts one through three of the third-party complaint.

### C. Dismissal of remaining counts for failure to state a claim

As to the claims for breach of fiduciary duty and breach of the duty of good faith and fair dealing (count 4), the trial court determined that these claims failed as a matter of law because Bethel UMC had not alleged any breach of contract claim, and the asserted claims do not constitute independent causes of action under Tennessee law. Further, the court concluded that Bethel UMC had not pled "facts sufficient to establish a fiduciary duty owing from Holston to Bethel [UMC]" and had not made any allegations regarding damages sustained as a result of the alleged breach. Therefore, the court ruled that count 4 of Bethel's amended third-party complaint (alleging breach of fiduciary duty and breach of the duty of good faith and fair dealing) was dismissed for failure to state a claim upon which relief may be granted.

As to count 5 of the amended third-party complaint, for fraud and abuse of process, the trial court determined that, because Bethel UMC had not alleged "any specific conduct attributable to the individual employees of Holston (Robbins and Padgett), such claims must fail as a matter of law." Further, the court stated that the remaining third-party defendants, who were members or trustees of Holston, were immune from suit for conduct in managing the affairs of a non-profit organization. The court, therefore, ruled that this count was dismissed for failure to state a claim for which relief may be granted.

On appeal, Bethel UMC assigns error to the trial court's dismissal of these claims, asserting that the third-party complaint gave Holston notice "of the wrongs committed and the injuries complained of within reasonable certainty." Holston's motion to dismiss was made pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief may be granted. The trial court dismissed counts four and five because their allegations, even if true, did not establish a legal claim for relief. *See Webb*, 346 S.W.3d at 427 (stating that a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action'") (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). Bethel UMC asserts that, even if "there is a valid trust formed in accordance with the laws of Tennessee, then the Appellees [Holston] are clearly in violation of T.C.A. § 35-18-801 et. seq." It appears that Bethel UMC meant to reference Tenn. Code Ann. § 35-15-801, which relates to a trustee's duty to administer a trust. However, Bethel UMC fails to provide any explanation as to how the complaint included facts to establish a violation of this statute.

Bethel UMC further states:

> There are also numerous other issues that the trial court just skipped over or didn't consider such as Footnotes that indicate an admission of a breach of contract if the Appellees were able to contract, Due Process and Equal Protection violations of the State and Federal Constitutions, Statute of Frauds violations and unilateral contracts and Scrivner's demands via Deeds.

This sentence constitutes the entirety of Bethel UMC's argument on the "numerous other issues." Bethel UMC does not point to any factual allegations in the complaint to support its assertions of statutory and constitutional violations. To survive a motion to dismiss for failure to state a claim, a complaint "'must contain sufficient factual allegations to articulate a claim for relief'" and "'must raise the pleader's right to relief beyond the speculative level.'" *Webb*, 346 S.W.3d at 427 (quoting *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103-104 (Tenn. 2010)).

The trial court stated that the amended third-party complaint was "dismissed in its entirety." Bethel UMC argues that the trial court erred in dismissing the claim for civil conspiracy by failing to specifically address the claim in its order. The trial court had already addressed the failure of the complaint to assert a legal claim against the individual third-party defendants. In its appellate brief, Bethel UMC cites the elements of a claim for civil conspiracy and then concludes that the claim was dismissed in error. It does not point to any set of facts to make out a claim for civil conspiracy.

We find no error in the trial court's dismissal of counts 4 through 6 for failure to state a claim upon which relief may be granted.

III.     Attorney fees on appeal

Holston asks this Court for an award of attorney fees and costs on appeal pursuant to Tenn. Code Ann. § 27-1-122, which addresses frivolous appeals. A frivolous appeal is "devoid of merit or . . . has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citations omitted). The decision as to whether damages should be awarded under Tenn. Code Ann. § 27-1-122 rests within the discretion of the reviewing court. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). We decline to exercise our discretion to award Holston its attorney fees and costs in this matter.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants, Bethel United Methodist Church and others, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

- 19 -